**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Gregory LUMAN, Defendant–Appellant.**

**No. 96CA1561.**

Colorado Court of Appeals, Div. III.

April 15, 1999.

As Modified on Denial of Rehearing Aug. 5, 1999.

Certiorari Denied March 13, 2000.

---

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, H. Michael Steinberg, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Gregory Luman, appeals from the judgment of conviction entered on jury verdicts finding him guilty of one count of sexual assault on a child, one count of sexual assault on a child by a person in a position of trust, and one count of sexual assault on a child as part of a pattern of sexual abuse. We reverse and remand for a new trial.

The defendant resided with his sister and her four children and contributed to the household expenses. According to the prosecution's evidence, between the dates of October 1, 1985, and August 31, 1992, defendant sexually assaulted the victim, his niece, on almost a daily basis when she was between the ages of five and twelve.

The principal evidence came from the testimony of the victim and from a recorded telephone conversation in which the victim .confronted defendant after she had moved out of the house and taken up residence with her father in Michigan.

I.

Defendant first contends that the trial court committed reversible error by denying his challenge for cause of a prospective juror. We agree.

A defendant in a criminal proceeding has a fundamental right to a trial by fair and impartial jurors. *People v. Abbott,* 690 P.2d 1263 (Colo.1984). The ultimate test for determining whether a prospective juror should be disqualified for bias is whether that person will render a fair and impartial verdict according to the law and the evidence presented at trial. *See* § 16–10–103(1)(j), C.R.S.1998; *see also People v. Fuller,* 791 P.2d 702 (Colo.1990); *People v. Ned,* 923 P.2d 271 (Colo.App.1996).

A trial court should sustain a challenge for cause if there exists a state of mind in a juror evincing enmity or bias toward a defendant or the prosecution. *People v. Sandoval,* 733 P.2d 319 (Colo.1987). Additional-

ly, if a trial court has genuine doubt about the juror's ability to be impartial, it should resolve the doubt by sustaining the challenge and excusing the juror. *People v. Russo,* 713 P.2d 356 (Colo.1986).

■ The trial court is in the best position to assess fully the state of mind of a potential juror. *People v. Sandoval, supra.* Thus, a trial court has broad discretion in ruling on challenges for cause, and its decision will not be reversed unless there is an abuse of discretion. *Carrillo v. People,* 974 P.2d 478 (Colo.1999).

■ However, despite the wide discretion accorded the trial court, *see People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976), appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People,* 624 P.2d 1331, 1332 (Colo. 1981).

■ A court abuses its discretion when it renders a decision that is manifestly arbitrary, unreasonable, or unfair. *People v. Milton,* 732 P.2d 1199 (Colo.1987).

■ In conducting our review of a denial of a challenge for cause, we must consider the entire *voir dire* examination of a juror. *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Schmidt,* 885 P.2d 312 (Colo.App. 1994). That voir dire examination, which occurred in chambers in response to a jury questionnaire, is set forth in its entirety in the Appendix.

■ The challenged prospective juror was an unlicensed psychotherapist who specialized in treating victims of abuse with some emphasis on sexual abuse. In addition, the prospective juror had been the victim of a sexual assault by a stranger when she was a child and her family history contained several instances of sexual abuse. Throughout the questioning, the prospective juror indicated that her personal, professional, and family history and experience would make it difficult, if not impossible, to view the evidence in the case in an objective and unbiased manner.

In denying defense counsel's challenge for cause, the trial court made the following findings:

> Although [juror] certainly has a history tied to sexual assault of – this particular assault against her to her professional life to her unusual family history, first of all, that history is neutral. In some sense, she has sexual abusers and sexual victims on both sides of that issue in her family. She's clearly interested in the concept in general of sexual abuse. She deals with sexual abuse survivors. She has been sexually abused.

> I also found her credible when she said, ... after obviously giving great thought to the question, she said, Yes, I think I could put all of these things aside and be fair. I believe her when she says that. I think the very fact that she has training in this area adds credence to her belief that she could set this aside, and the defendant's challenge for cause to [prospective juror] will be denied.

Contrary to the trial court's statement, at no point in the voir dire did the juror expressly or impliedly state that she could put aside her family history and professional experience and be fair. In making this central finding, the trial court may well have been relying on the following two exchanges:

> THE COURT: Do you think you could be fair? What were you thinking of?

> JUROR: What I was thinking of was that in my family there is a history of sexual abuse in my family, and working a lot with people who have been sexually abused or assaulted, I think I have opinions or thoughts that probably would keep me from being very unbiased.

>      . . . .

> PROSECUTOR: Do you think it would be the degree of empathy that you – that would work against Mr. Luman?

> JUROR: That's a very hard question. No.

We read the juror's answer to the first exchange as an extended "no" and fail to perceive that it could reasonably be read in any other manner.

It is the second exchange upon which the People argue the trial court relied in making its findings. At the outset, the juror was not asked if she could be fair but whether her empathy for the victim would work to the detriment of defendant. Reluctantly, and equivocally, she replied in the negative.

In addition, taking the voir dire as a whole, we conclude there is no support in the record for a finding or conclusion that this juror could be fair and impartial or that she ever expressly or impliedly said she could. *See Carrillo v. People, supra.* Nor can we say that the demeanor of the juror, however compelling, could overcome the clear implications of her responses and significant concerns over her inability to be fair contained in this record.

Our supreme court recently announced *Carrillo v. People, supra,* in which it affirmed the defendant's first degree murder conviction and held that the standard of review with regard to a challenge for cause is whether the trial court abused it discretion. This standard is to be distinguished from a "clear abuse of discretion," a "gross abuse of discretion," or some other heightened abuse of discretion standard. *See People v. Fuller, supra* (standard stated as clear abuse of discretion).

In *Carrillo,* a prospective juror knew the victim's father, they both worked for the same employer, and they engaged in extended conversations about family though not about the murder. During voir dire, the prospective juror stated on more than one occasion that if he were the defendant, he would not like to have a person like himself on the jury. However, in *Carrillo* there was an extended rehabilitation by the prosecutor during which the prospective juror stated that he thought he would decide the case on the evidence presented. The supreme court concluded that he, therefore, did not "articulate a clear expression of bias requiring his dismissal." *Carrillo v. People, supra,* 974 P.2d at 488.

We have reviewed the entire voir dire and the trial court's finding, applied the applicable standard of review, and conclude that there is no support for the trial court's findings in this record. Unlike *Carrillo,* there was no rehabilitation of the prospective juror by the prosecution containing unequivocal statements by the juror of her commitment to fairness that might support the trial court's conclusion. As previously discussed, the prospective juror remained unsure of her ability to be fair and never stated otherwise. As such, we conclude that the trial court abused its discretion in denying defendant's challenge for cause.

After the trial court's ruling, defense counsel exercised a peremptory challenge and excused the potential juror, and used all its remaining peremptory challenges on other panel members. Accordingly, reversal is mandated. *See People v. Maes,* 43 Colo.App. 365, 609 P.2d 1105 (1979).

## II.

■ Because it may arise on retrial, we address and agree with defendant's contention that because the information charged, and the evidence included episodes predating the June 1, 1989, enactment of the statute now codified as § 18-3-405(2)(d), C.R.S.1998, and the jury instructions did not require the jury to limit its inquiry to post-amendment conduct, his conviction for sexual assault on a child based upon a pattern of abuse cannot stand because it applies the statute in a manner so as to violate the prohibition against *ex post facto* laws.

■ When a law either imposes punishment for an act that was not a crime when it was committed or makes the punishment for a crime more onerous than the punishment when the crime was committed, it violates the constitutional prohibitions against *ex post facto* laws. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *People v. Grenemyer,* 827 P.2d 603 (Colo.App.1992).

We are persuaded by *People v. Graham,* 876 P.2d 68 (Colo.App.1994). In that case, a division of this court determined that an enhancement portion of a conviction for sexual assault on a child as part of a pattern of abuse was an *ex post facto* law because the jurors were not instructed that, in order to convict the defendant of pattern sexual abuse, they had to find the predicate offense

to have occurred after the effective date of the statute. The division stated: "[T]here is no way that we can determine from the jurors' verdict ... whether the predicate offense they selected to justify the enhancement from a class 4 to a class 3 felony occurred after the enhancement portion of the statute became operative." *People v. Graham, supra,* 876 P.2d at 72. Thus, the court vacated the sentence enhancement portion of the conviction because the verdict could have been based on an act which preceded the passage of the statute.

Here, as in *Graham,* the trial court did not instruct the jury that it must find the predicate offense occurred after the effective date of the statute. Instead, the instructions listing the elements of sexual assault on a child as part of a pattern of abuse stated between and including the dates of October 1, 1985, and August 31, 1992. Similarly, the trial court's unanimity instruction informed the jurors that they must unanimously agree that the specific act or acts occurred between and including the dates of October 1, 1985, and August 31, 1992. As such, the verdict could have been based on an act, or acts, preceding the effective date of the statute.

We conclude that the reasoning set forth in *Thomas v. People,* 803 P.2d 144 (Colo.1990), upon which the People rely, is inapposite. In *Thomas,* our supreme court addressed due process concerns relating to a defendant's right to have sufficient notice of the act or acts charged to prepare a defense and to be protected from double jeopardy. The question of *ex post facto* law was not at issue.

While we agree with the People that there was evidence of a continuing pattern of sexual abuse after the effective date of the statute, and, indeed, some of the more egregious conduct occurred after that date, such was the case in *People v. Graham, supra.* We are unable to determine whether the jury's inquiry was limited to the period following the adoption of the statute or its verdict based on conduct occurring in that period.

■ Under these circumstances, we conclude that if acts preceding the date of the enactment of the statute are included in the charges, the jury must be instructed not to consider them in determining defendant's guilt or innocence with respect to sexual abuse as a part of a pattern of sexual abuse. If the jury is permitted to consider them, the statute, as applied to defendant, is retrospective and violates the *ex post facto* prohibition.

### III.

Also of potential significance on retrial is defendant's contention that, under § 18–3–405, C.R.S.1998, sexual assault on a child is a lesser-included offense of the crime of sexual assault on a child as part of a pattern of sexual abuse and that, therefore, the trial court erred by failing to vacate his sexual assault on a child conviction.

Alternatively, defendant asserts that sexual assault on a child as part of a pattern of sexual abuse is a sentencing enhancer and not a separate crime. Therefore, he argues he cannot be convicted of both sexual assault on a child and sexual assault on a child as part of a pattern of sexual abuse.

■ We agree with defendant's latter contention and, thus, do not address the first. We hold that under *People v. Longoria,* 862 P.2d 266 (Colo.1993), § 18–3–405(2)(d), C.R.S.1998, defining sexual assault on a child as part of a pattern of sexual abuse is a sentencing enhancer of sexual assault on a child because it increases the punishment for that offense from a class 4 felony to a class 3 felony.

Section 18–3–405(1), C.R.S.1998, has not been amended subsequent to the dates of the offenses in question. It defines the crime of sexual assault on a child as:

any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

Section 18–3–405(2)(d) defines sexual assault on a child as part of a pattern of sexual abuse as:

(d) The actor commits the offense as a part of a pattern of sexual abuse *as described in subsection (1) of this section.* No specific date or time must be alleged for the pattern of sexual abuse; except

that the acts constituting the pattern of sexual abuse must have been committed within ten years prior to the offense charged in the information or indictment. The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5). (emphasis added)

The General Assembly added the emphasized language in 1995. Colo. Sess. Laws 1995, ch. 240, § 11 at 1253.

Relying on *People v. Longoria, supra,* and prior to the amendment, a division of this court in *People v. Hansen,* 920 P.2d 831 (Colo.App.1995) characterized the language in § 18–3–405(2)(d) as a sentencing enhancer.

■ Because the operative effect of the statutory language remains unchanged, we conclude that, as defined in § 18–3–405(2)(d), sexual assault on a child as part of a pattern of sexual abuse should be construed as a sentence enhancer of the single crime of sexual assault on a child. *See People v. Bowring,* 902 P.2d 911 (Colo.App.1995).

Therefore, in the event, on retrial, defendant is again convicted of sexual assault on a child and sexual assault on a child as part of a pattern of sexual abuse, the former should merge into the latter and defendant should be sentenced for sexual assault on a child as part of a pattern of sexual abuse, a class three felony.

### IV.

For purposes of guidance on retrial, we also address defendant's contention that the trial court interpreted the statutory phrase "one in a position of trust with respect to the victim" too broadly in its instructions to the jury. We do not agree.

A person commits a separate offense of sexual assault on a child by one in a position of trust when he or she "knowingly subjects another not his or her spouse to any sexual contact ... if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim." Section 18–3–405.3(1), C.R.S.1998.

The People charged and prosecuted defendant under Colo. Sess. Laws 1989, ch. 163, § 18–3–405(2)(b), which provided that sexual assault on a child became a class 3 felony if:

The actor who commits the offense on a victim is one in a position of trust with respect to the victim.

Colo. Sess. Laws 1986, ch. 136, § 18–3–401(3.5), in effect at the time of the charged offense, defined a person in a position of trust as:

One in a 'position of trust' includes, *but is not limited to,* any person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties, or responsibilities concerning a child, or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, *no matter how brief,* at the time of an unlawful act. (emphasis added)

■ Here, the People presented evidence that defendant lived in the same residence with the victim and her family and contributed to the household income, that the victim spent hours alone with defendant in his room, that the victim was the only child whom defendant allowed in his room, and that neither the victim's mother nor any other individual intervened during the time victim was alone in defendant's room.

We therefore conclude that, on retrial, given similar evidence, the jury could conclude that defendant was in a position of trust relative to the victim within the meaning of the applicable statute.

In 1990, the General Assembly amended the definition of "position of trust" to include "a guardian or someone otherwise responsible for the general supervision of a child's welfare." Colo. Sess. Laws 1990, ch. 139, § 15 at 1028. Although the previous definition of "position of trust," under which defendant was charged, did not include this language, the trial court nevertheless included the amended language in its instructions. On retrial, the trial court should instruct the

jury in accordance with the definition of "position of trust" in effect at the time of the alleged offense.

The judgment of conviction is reversed and the cause is remanded for a new trial in accordance with the views expressed in this opinion.

Judge JONES and Judge MARQUEZ concur.

## APPENDIX

THE COURT: I had a few questions. Your questionnaire, of course, you asked to come back here and talk to us about some of these things. Are you a licensed or unlicensed psychotherapist?

JUROR: Unlicensed psychotherapist.

THE COURT: How long have you been doing that?

JUROR: I've been practicing in Denver since 1986.

THE COURT: Do you specialize in any particular area?

JUROR: I specialize in women in recovery from addictive disorders and women in recovery from sexual abuse.

THE COURT: And you indicated on Question 15 – the question was whether you or a family member or acquaintance had ever experienced a sexual assault, and you said yes.

JUROR: If you wanted to know about that, I would rather talk about that back here, yes.

THE COURT: We need to know about it.

JUROR: Where would you like me to start?

THE COURT: When did it happen?

JUROR: When I was in fourth grade. I was sexually assaulted by a stranger.

THE COURT: So we're tactful enough, I think on the questionnaires not to ask ages. How long ago was that?

JUROR: Oh, I'm 30 now. So I'm thinking, let's see, fourth grade.

THE COURT: I believe you were probably 10 in fourth grade, so it was 20 years ago?

JUROR: (Nodded head.)

THE COURT: And did this involve an abduction and a sexual assault?

JUROR: No. It happened – no. I was not abducted. It happened in an alley on my way home, walking home from school.

THE COURT: It was a stranger?

JUROR: It was a stranger.

THE COURT: Were there criminal charges ever filed?

JUROR: The police were called, and they talked to me. They showed me a lot of mug shots, and the person was never apprehended.

THE COURT: I need to get a sense of whether you think that that experience is still so near the surface for you that it would be unfair with your ability to be a fair juror in this case which involves allegations of sexual assault on a child.

JUROR: I don't know that that event is that fresh in my mind that it would. In fact, I never think about it.

THE COURT: Would you be thinking about it in this case as evidence was presented in this case?

JUROR: I probably couldn't help but think about it a little bit. If, you know, some of the things are going to be brought up in this case, have something to do with sexual assault, I can't help but think that might not cause me to think some of that.

THE COURT: Do you think you could be fair? What were you thinking of?

JUROR: What I was thinking of was that in my family there is a history of sexual abuse in my family, and working a lot with people who have been sexually abused or assaulted, I think I have opinions or thoughts that probably would keep me from being very unbiased.

THE COURT: When you say in your family there's a history of sexual abuse, I need to know more. As perpetrator? As a victim? As both?

JUROR: Both.

THE COURT: Tell me more about that. Your immediate family?

JUROR: My family of origin. My grandmother was sexually abused. My father—my father has been accused of sexually

abusing other people in our family. My mother was sexually abused by her father. These are all things that have been told to me.

THE COURT: These have been told to you currently, or were they told—

JUROR: I've known them for a long time.

THE COURT: Were they told to you as they were going on?

JUROR: No.

THE COURT: These are told historically?

JUROR: Yes.

THE COURT: Counsel may inquire. Ms. [Prosecutor].

PROSECUTOR: Ms. [Juror], do you feel that your—these are always going to be with the alleged victim because you treat people in a similar situation?

JUROR: Always? I don't know that these would always be with the victim. I mean, my father was sexually abused by my grandmother, and I have empathy for him, and he has sexually abused others, so I can't say always I have a tendency to feel that I would feel empathy for a victim.

PROSECUTOR: Do you think it would be the degree of empathy that you – that would work against Mr. Luman?

JUROR: That's a very hard question. No.

PROSECUTOR: If you got an instruction from the Judge that you were to put aside any biases or sympathies and look at the evidence in an impartial manner, would you be able to do that?

JUROR: I would hope so. I have – my job as a therapist is to be able to listen to things that are presented to me with a fairly unbiased ear.

PROSECUTOR: Is that different from the answer you gave that you thought there were reasons that you cannot be—

JUROR: I thought I should be honest.

PROSECUTOR: And we appreciate that. That's exactly what we want.

JUROR: I don't see myself as a particularly biased person. But I thought that I should be honest that I have experiences and family history and personal experience that really might be a problem.

PROSECUTOR: Thank you.

THE COURT: Mr. [Defense Counsel].

DEFENSE COUNSEL: Ma'am, I'm [Defense Counsel], Mr. Luman's lawyer. I think I'm hearing that there may be three areas where you have exposure to similar circumstances in a case like this where you might not have them if this were, say, a burglary case or a contract case or else something else. First of all, am I hearing that you yourself were a victim of sexual assault?

JUROR: Yes.

DEFENSE COUNSEL: And while perhaps because of your training and your experience or whatnot, you've been able to put that away, file it away; you're not sure that it won't come back and bite you during this trial, fair enough?

JUROR: Right.

DEFENSE COUNSEL: But more problematic, if I'm understanding things correctly, is your family history because you've got it on both sides of the family for more than one generation?

JUROR: Yes.

DEFENSE COUNSEL: And it sounded like something that kind of almost consumes the family, a big deal in the family; is that fair to say?

JUROR: It has been.

DEFENSE COUNSEL: So it's not just an incidental thing, Uncle George did something and then everybody kind of talked about it; something that's been a problem in the family for a long time?

JUROR: Exactly.

DEFENSE COUNSEL: There aren't a lot of hard feelings around the family about some relatives?

JUROR: Some is.

DEFENSE COUNSEL: And you have kind of dedicated your life to working with those who are suffering from this type of abuse; is that right?

JUROR: Some, yes.

DEFENSE COUNSEL: What percentage of your therapy practice consists working

with abused women, either sexual abuse or physical abuse or that type of thing?

JUROR: In any kind of abuse?

DEFENSE COUNSEL: Yes.

JUROR: Probably at least 50 percent.

DEFENSE COUNSEL: And out of that 50 percent, that half, what percentage has been with sexual abuse?

JUROR: Currently right now?

DEFENSE COUNSEL: Historically.

JUROR: A lot. Probably close to half.

DEFENSE COUNSEL: Do you find yourself believing most of the accounts that your patients give you?

JUROR: When someone comes to me and tells me they were abused, it's my job as a therapist to listen to what they tell me and assume that what they were telling me is true because I have no way of knowing whether it was or not, so I would have to say yes, I probably assume that what they are telling me is true.

I have had clients who have told me stories that are unbelievable. But it's my job as a therapist to take it at face value.

DEFENSE COUNSEL: In this case you may hear testimony from a sexual abuse victim who is in her teenage years at this time and about sexual abuse that occurred between her ages of 5 and 12. Is there anything about your training and your experience that tells you that testimony from younger children is more believable on average than testimony from older people or anything like that?

JUROR: No.

DEFENSE COUNSEL: Okay. You may hear from a therapist and from a pediatrician who specializes in child sexual abuse. Because you have had training and studied, have experience working in this field as a therapist yourself, do you think that people with those credentials would get more—would receive perhaps more credibility from you than would an average witness. All other things being equal?

JUROR: Other things being equal if they specialize, then I would assume that they are speaking from expertise, and I'll listen to whatever they had to say. They are professionals in their field.

DEFENSE COUNSEL: And I guess what I'm saying is: Is that – you know, if therapists and doctors are on their side and people are on my side are just, you know, friends, family, neighbors, whose side – I mean, do you feel like you might tend to give more credence to their experts than you would to people on my side?

JUROR: Probably would have a tendency to give credence to professionals—

DEFENSE COUNSEL: Because—

JUROR:—who specialize in something other than a friend or family member who doesn't have any training, sure.

DEFENSE COUNSEL: And would you find yourself using your training and experience to—as you listen to these people say, check, check.

JUROR: You know, it would be hard not to. It would be hard to put that part of myself away. That's what I do for a living. I wouldn't know how to—it's not just a job. It's who I am. I don't know how I would put that part of myself away to not listen with those ears.

DEFENSE COUNSEL: I guess if you were to look at this case and you say to yourself, you know, this is a perfectly level playing field, both sides in this case are starting off with me at exactly the same starting point and wind not blowing in either direction, and neither side has to climb uphill, can you say that in this case – or do you think that the Government has some advantage based on your experience and the kind of training you have and your family history and that sort of thing? That's the only way I know how to ask it, and I can't read your mind; you just have to tell us.

JUROR: I know. I'm just trying to think about what you just asked me. I just need to be clear on the question you're asking me. If I were to sit as a juror on this case, would I be looking at this, both of you starting from the same place? Of course both of you were starting from the same place.

DEFENSE COUNSEL: Thank you very much. No other questions.