**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Shannon Dean MERROW,**
**Defendant–Appellant.**

**No. 05CA2023.**

Colorado Court of Appeals,
Div. VI.

Aug. 23, 2007.

Certiorari Denied April 14, 2008.

# 320

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Keyonyu X. O'Connell, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Shannon Dean Merrow, appeals the trial court's judgment of conviction entered on jury verdicts finding him guilty of first degree murder, attempted first degree murder, first degree assault, and two counts of conspiracy to commit first degree murder. We reverse and remand for a new trial.

## I. Challenge for Cause

Defendant contends that the trial court committed reversible error by denying his challenges for cause to five potential jurors. We agree that the trial court should have granted defendant's challenge for cause as to one juror and therefore do not address his arguments concerning the other jurors.

## A. Introduction

What happens if a trial court erroneously refuses to dismiss a potential juror for cause and the defendant later excuses that juror through a peremptory challenge? The answer depends on where the case is tried. In federal court, the error rarely results in reversal. Under *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the trial court's error is regarded as harmless unless the defendant can demonstrate that his jury included a biased juror. In Colorado, the error almost always results in reversal. Under *People v. Macrander*, 828 P.2d 234 (Colo.1992), the erroneous denial of a challenge for cause is per se fatal if the defendant excuses the potential juror through a peremptory challenge and exhausts his remaining peremptory challenges.

Not surprisingly, the *Macrander* rule has given rise to a highly deferential standard of review. *See Carrillo v. People*, 974 P.2d 478, 485–86 (Colo.1999) (emphasizing that the abuse of discretion standard is a "very high standard of review"). Because the determination of error is freighted with such consequence, Colorado's appellate courts are reluctant to conclude that a trial court abused its discretion in denying a defendant's challenge for cause. *See, e.g., People v. Vecchiarelli–McLaughlin*, 984 P.2d 72 (Colo.1999); *Carrillo v. People, supra; People v. Arko*, 159 P.3d 713, 720 (Colo.App.2006) (*cert. granted on other issues*, Apr. 30, 2007).

Occasionally, however, an appellate court has no choice but to conclude that the trial court erred. This is one of those cases.

## B. Pertinent Events

Early in voir dire, the trial court stated that the jury would be required to apply the law that it received from the court. The court then informed the potential jurors about such general principles as the presumption of innocence, the prosecution's burden of proof, reasonable doubt, and the determination of credibility. After briefly describing these concepts, the court asked, "Does anybody feel that they would have problems generally following those instructions?" None of the potential jurors responded.

Later during voir dire, the court examined some of the potential jurors in chambers. Juror F was asked whether she had learned about the case through the news media. She disclosed minimal knowledge of the case and agreed that she could base her decision solely on information presented in court.

Juror F was also questioned about her schedule and the extent to which jury service would impose a hardship. She said that she would be distracted by having to miss a class

and acknowledged that she might try to "whip through" jury deliberations to resume her course. In response to this information, defense counsel moved to dismiss her for cause. Although the prosecution had no objection, the court denied this challenge. It ruled that, while Juror F "would be distracted," she could still be a good juror.

Later, the potential jurors were questioned about their views on drug use and self-defense. Juror F had strong feelings on these subjects:

[JUROR F]: I believe in the use of deadly force. However, if there are drugs involved, it completely nullifies the use of it, because I've never done drugs, but I've had a few too many drinks in life.

And we all know how it affects your perception, and, you know, it just amazes me how the victims, several people discounted the victims yesterday because they were gang members. But the people I know that do drugs [and] are involved in crimes are white people, middle-class, because I see it all the time in the schools.

[J.N.] was one of my students at [school], and his parents burned him to death because they were loser meth addicts, and I feel very strongly your perception is way off if you're on drugs.

I'm not going to count the testimony of anybody who's under the influence, even if they weren't under the influence because people who are on drugs, during the time they're not, you know, I had a colleague who had her identity stolen because of a drug addict, wasn't on drugs at the time.

You do things. I feel very strongly about that. And I for one am not going to set the precedent in my community that someone is going—because they did drugs and they defended themselves, that's okay, because it may have been gang members that time that some people discounted, but next time you could be the victim.

[DEFENSE COUNSEL]: It sounds like you feel pretty strongly about it?

[JUROR F]: Very strongly.

Defense counsel again challenged Juror F for cause, arguing that she could not be fair.

The trial court denied the challenge as follows:

[E]ven though counsel brought out some pretty strong feelings from a number of jurors, the question was never asked, well, in spite of that strong feeling, could you follow the instructions.

... Nothing was indicated to her that she could not follow the instruction. In fact, in our other conversation with [Juror F], she said she could follow the instructions.

So while she may feel strongly, the Court is convinced that she could still follow the instructions.

Defense counsel excused Juror F through a peremptory challenge and exhausted defendant's remaining peremptory challenges.

### C. Discussion

▮ The trial court rejected the challenge for cause because Juror F never stated that she would be unable to follow the court's instructions. This ruling was erroneous. If a potential juror's statements do not evince the sort of enmity or bias that warrants dismissal under § 16-10-103(1)(j), C.R.S. 2006, a trial court may deny a challenge for cause without further inquiry. But when, as here, a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly, a challenge for cause must be granted in the absence of rehabilitative questioning or other counter-balancing information. *See People v. Luman,* 994 P.2d 432, 436 (Colo.App.1999).

The court also erred in concluding that defense counsel's concerns were answered by Juror F's earlier statements. Based on the earlier exchanges, the court could reasonably have concluded that Juror F could (1) observe the law as to the presumption of innocence, the prosecution's burden of proof, and reasonable doubt, (2) decide the case based on the evidence (and not on media reports), and (3) participate fully, even though distracted. But the record contains nothing to support an inference that Juror F would be able to resolve credibility fairly, given her views about drug usage.

We therefore conclude that the trial court abused its discretion in denying defendant's challenge for cause.

■ It follows that we must reverse defendant's conviction and remand for a new trial. The supreme court forbids any inquiry into prejudice because it presumes that a fair trial cannot occur if the trial court's ruling has "impair[ed] the defendant's ability to change the ultimate composition of the jury selected to try the case." *See People v. Macrander, supra,* 828 P.2d at 244. It does not matter whether we agree with this view or approve of the result. We must follow binding precedent.

## II.   Other Contentions

In light of our conclusion in Part I, we need not address defendant's remaining contentions.

The judgment of conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge LOEB concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While I am in agreement with the majority's disposition, retrial in this and similar cases may exact significant social costs. *See People v. Sepulveda,* 65 P.3d 1002, 1008 (Colo.2003) ("Resources of the district attorney are limited, witnesses' memories fade, witnesses move away and victims hesitate to testify again."). Hence, I write separately in the hope that if the supreme court grants certiorari in this case, it will provide additional guidance concerning the following issues. Such guidance would make appellate decisions on challenges for cause more predictable and could reduce the risk of trial court error.

## I.   *Carrillo*

Many criminal defendants appeal trial court decisions rejecting challenges for cause to prospective jurors. Under the broad discretion afforded trial courts in *Carrillo v. People,* 974 P.2d 478 (Colo.1999), the vast majority of those decisions must be affirmed, which raises the question of why the issue is argued on appeal so often. *See People v. Rodriguez,* 914 P.2d 230, 303 (Colo.1996) (appellate counsel's "duty to render effective advocacy requires prioritizing issues on appeal based upon their strength").

The answer may lie in *People v. Young,* 16 P.3d 821, 824 (Colo.2001), where the supreme court said, "When it considered the present case on remand, the court of appeals appeared to interpret *Carrillo* as lowering the standard of appellate review. That was not our intent." But in my view, the data suggests otherwise.

Since *Carrillo,* divisions of this court have reversed denial of challenges for cause based on statements of prospective jurors during voir dire in four published cases. The supreme court upheld the trial court in *Young, supra,* and *People v. Vecchiarelli–McLaughlin,* 984 P.2d 72 (Colo.1999).

In the other two cases, certiorari was denied. *See People v. Wilson,* 114 P.3d 19 (Colo.App.2004); *People v. Luman,* 994 P.2d 432 (Colo.App.1999). However, "the denial of a petition for a writ of certiorari does not support the conclusion that either the majority or the dissent at the prior levels correctly applied the law." *Allison v. Indus. Claim Appeals Office,* 884 P.2d 1113, 1120 (Colo. 1994).

According to *Carrillo, supra,* 974 P.2d at 485–86, "the abuse of discretion standard is already a very high standard of review.... It ... serves to discourage an appellate court from second-guessing those judgments based on a cold record." This standard has been applied to uphold denial of a challenge for cause "although the record is somewhat ambiguous." *People v. Young, supra,* 16 P.3d at 825. Yet, an appellate court can inform itself only from the record.

The divisions in *Wilson* and *Luman* juxtaposed the *Carrillo* language against the maxim that appellate courts must not "abdicate their responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People,* 624 P.2d 1331, 1332 (Colo. 1981). I discern no bright-line test between not abdicating such appellate responsibility while avoiding second-guessing.

Moreover, abuse of discretion is a very elastic standard. *See People v. Riggs,* 87 P.3d 109, 114 (Colo.2004) ("judicial discretion implies the absence of any settled legal standard that controls the controversy at hand"); *People v. Milton,* 732 P.2d 1199, 1207 (Colo. 1987) (discretion means the trial court "has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other").

A more manageable standard would be akin to the clear error test that protects factual findings: if the trial court's denial of the challenge for cause finds *any* support in the record, it may not be disturbed. *See People v. Arko,* 159 P.3d 713, 720 (Colo.App. 2006) *(cert. granted on other issues,* Apr. 30, 2007).

Using such a standard, appellants could choose to raise this issue only where they can point to particular deficiencies in the record, and we could decide it by focusing on such deficiencies. Both advocates and reviewing courts would be relieved of the uncertainty inherent in "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses." *Carrillo v. People, supra,* 974 P.2d at 486.

## II. Trial Court Rehabilitation

"It is the trial court's duty to determine the competency and credibility of each juror." *Medina v. People,* 114 P.3d 845, 856 (Colo.2005). The majority refers to "the absence of rehabilitative questioning." But in my view, once a challenge for cause has been made, attempted rehabilitation of the prospective juror by the trial court, often effected through leading questions, raises two new problems.

First, "the trial court must remain neutral." *People v. Romero,* 694 P.2d 1256, 1274 (Colo.1985); *see also People in Interest of N.A.T.,* 134 P.3d 535, 543 (Colo.App.2006) (Román, J., dissenting) (to search the record for issues "not raised by counsel or to construct arguments to support identified issues ... violates the neutrality and independence of the court").

A trial court may properly inject itself during voir dire to clarify a prospective ju-

ror's position. And after a challenge for cause has been raised, the court could afford the adverse party further voir dire on the issue without compromising its neutrality. Otherwise, however, I believe that following a challenge for cause, the trial court should act *only* as a neutral arbiter.

Second, "[t]he influence of the trial judge on the jury is necessarily and properly of great weight." *Simpson v. Stjernholm,* 985 P.2d 31, 35 (Colo.App.1998) (quoting *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)); *see also People v. James,* 40 P.3d 36, 41 (Colo.App. 2001).

But rehabilitative questions by the trial court risk abusing that influence. *See Leick v. People,* 136 Colo. 535, 570, 322 P.2d 674, 693 (1958) (Sutton, J., dissenting) ("[S]ome jurors who were up to then disqualified due to their answers were pressed with leading questions and thorough interrogation to finally give the answers desired by the state to qualify them. Trial courts have a rather wide latitude in such examinations ...; however, here I believe ... the trial court abused its discretion...."). Further, answers to leading questions are viewed with suspicion. *See Wigger v. McKee,* 809 P.2d 999, 1007 (Colo.App.1990); *see also Berger v. People,* 122 Colo. 367, 395–97, 224 P.2d 228, 243 (1950) (Holland, J., dissenting).

For both reasons, a record laden with leading questions by the trial court can leave a reviewing court uncertain about the sincerity of the prospective juror's answers. The answers to such questions may suggest overt acquiescence in the trial court's efforts to elicit a commitment to neutrality. But bias remains if the prospective juror tells the court only what it wants to hear, while covertly holding on to the previously articulated views that precipitated the challenge.

In sum, a trial judge who subjects a prospective juror with a strong preconceived bias to a barrage of leading questions creates a record that is problematic on appellate review. Excusing that prospective juror does not.