23CA0120 Peo v Delmolino 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0120
Adams County District Court No. 21CR2109
Honorable Jeffery A. Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Barry Charles Delmolino,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Philip J. Weiser, Attorney General, Alejandro Sorg Gonzalez, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen C. Arvin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Barry Charles Delmolino, appeals his convictions for internet sexual exploitation of a child.  We affirm.

## I.     Background

¶ 2     Over the span of two months, Delmolino, age seventy-two, communicated through an online platform where he sent sexually explicit communications or "sexts" and masturbated with three individuals he believed were under fifteen years of age.[1]  Delmolino was charged with three counts of internet sexual exploitation of a child under section 18-3-405.4(1), C.R.S. 2024, and a jury convicted him as charged.  On each charge, the trial court sentenced him to concurrent indeterminate sentences of six years to life in the custody of the Department of Corrections.

## II.     Analysis

¶ 3     Delmolino contends that (1) the trial court erred when it denied his challenge for cause to a juror; (2) the court erred when it continued his trial multiple times, eventually violating the Colorado speedy trial statutory deadline; and (3) the internet sexual

---

[1] At trial, Delmolino argued that the police had failed to confirm the age of the individuals.  But he does not raise that issue on appeal, so we do not address it.

exploitation of a child statute is unconstitutionally overbroad. We address each contention in turn.

## A. Juror Bias

¶ 4 Delmolino contends that, during voir dire, the trial court erred by denying his for-cause challenge to Juror 12, who subsequently served on the jury.

### 1. Applicable Law and Standard of Review

¶ 5 A defendant accused of a crime has a fundamental right to a trial by jurors who are fair and impartial. *People v. Abbott*, 690 P.2d 1263, 1267 (Colo. 1984). The court must sustain a challenge for cause based on "[t]he existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state." § 16-10-103(1)(j), C.R.S. 2024. However, a potential juror need not be dismissed "if the court is satisfied, from the examination of the juror or from other evidence, that [the juror] will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." *Id.*

¶ 6 It is the defendant's burden during voir dire to "demonstrate, through questioning, that the potential juror lack[s] impartiality." *People v. Rodriguez*, 914 P.2d 230, 263 (Colo. 1996) (quoting

2

*Wainwright v. Witt*, 469 U.S. 412, 423 (1985)).  And a trial court is only compelled to "grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions."  *People v. Harlan*, 8 P.3d 448, 460 (Colo. 2000), *overruled on other grounds by People v. Miller*, 113 P.3d 743, 748 (Colo. 2005).  A trial court need not excuse a juror sua sponte.  *People v. Grenier*, 200 P.3d 1062, 1068 (Colo. App. 2008).

¶ 7     We review a trial court's ruling on a challenge for cause to a prospective juror for an abuse of discretion.  *Id.*  As relevant here, a trial court abuses its discretion "if its ultimate ruling is 'manifestly arbitrary, unreasonable, or unfair.'"  *Vigil v. People*, 2019 CO 105, ¶ 14 (quoting *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008)).

2.     Juror 12's Statements and Voir Dire

¶ 8     The jury questionnaire advised that Delmolino was "accused of sexual exploitation of a child."  In her questionnaire, Juror 12 disclosed that she had been the victim of a 2009 rape and a 2010 sexual assault.  And in response to a question asking for "any other

3

information" she wrote that "it's hard not to be biased as a parent, but this is why we have this system."  However, she also checked a box affirming that there was nothing about the accusation that would prevent her "from being a fair juror in this criminal case" and explained her reasoning by writing "innocent until proven guilty."

¶ 9     On the morning of trial, Delmolino challenged Juror 12 for cause.  The trial court denied the challenge, finding that Juror 12 said "[i]nnocent until proven guilty, and [that] nothing would prevent her from being a fair juror in this trial."  However, the court noted that Delmolino could "certainly inquire about her ability to be fair on voir dire."

¶ 10    During voir dire, only the prosecutor elected to question Juror 12.

> [Prosecutor]: Are you familiar with what the term sexting means?
>
> [Juror 12]: Yes.
>
> [Prosecutor]: What does that mean to you.
>
> [Juror 12]: When you are communicating via text message sexual intentions, desires, like story telling between yourself and another person.
>
> [Prosecutor]: And, [Juror 12], if you heard evidence that sounded like . . . sexual story

telling perhaps, would you be able to listen to this case and give the evidence a fair shake?

[Juror 12]: Yes, because -- am I allowed to say?

[Prosecutor]: Absolutely.

[Juror 12]: There's three sides to the story, his side, my side, the truth, and the truth is what we are supposed to be focused on.

[Prosecutor]: Were you listening before when the Judge told you that actually the defendant's side might be something that you never hear and you don't have to hear?

[Juror 12]: Which is why we are dependent on the facts we are presented.

[Prosecutor]: Thank you.

¶ 11    Delmolino did not renew his challenge for cause after hearing this exchange with Juror 12.[2]

### 3. The Trial Court Did Not Err by Denying the Challenge for Cause

¶ 12    Delmolino argues that Juror 12's statements compelled the inference that she could not decide the issues presented in this case fairly. We disagree.

---

[2] To the extent that Delmolino seeks to challenge Juror 12 on the basis of her statements in voir dire, we note that a "trial court is not required to excuse a juror sua sponte." *People v. Grenier*, 200 P.3d 1062, 1068 (Colo. App. 2008).

¶ 13    Juror 12's responses on her questionnaire and during voir dire directly indicated that she could be fair and that her determination of the case was "dependent on the facts . . . presented."  She also indicated that regardless of her personal feelings, she was aware that she must focus on "the truth."  And while she said that it was "hard not to be biased as a parent," this statement does not demonstrate that she was unwilling or unable to accept the basic principles of criminal law and render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions.[3]  *See Harlan*, 8 P.3d at 460.

¶ 14    Additionally, a juror is not automatically biased by virtue of being a parent.  *See* § 16-10-103 (setting forth the grounds on which a trial court must sustain a challenge for cause).  And "'the court is not required to dismiss a prospective juror simply because . . . she has indicated a possible source of bias.'  'If the court is

---

[3] Delmolino also argues that "[i]t was unrealistic and unfair to expect [Juror 12] to shed years of post-traumatic stress — relating to her own history of sexual assault . . . and her role as a parent — in a single day to render a fair and unbiased verdict in this case."  But the record provides no support for the idea that Juror 12 suffers from post-traumatic stress that would prevent her from fairly hearing the case.

6

satisfied that the prospective juror will base the decision on the evidence and will follow the court's instructions,' it should not disqualify the juror." *People v. Montoya*, 141 P.3d 916, 919 (Colo. App. 2006) (quoting *People v. Strean*, 74 P.3d 387, 390-91 (Colo. App. 2002)).

¶ 15    In advancing his argument, Delmolino cites *People v. Luman*, 994 P.2d 432, 435-36 (Colo. App. 1999), and *People v. Merrow*, 181 P.3d 319, 321 (Colo. App. 2007), for the proposition that "generic statements about the presumption of innocence and 'the system'" are insufficient grounds to deny a challenge for cause. Neither of these cases support Delmolino's argument.

¶ 16    In *Luman*, a division of this court concluded that the trial court erred because "[c]ontrary to the trial court's statement, at no point in the voir dire did the juror expressly or impliedly state that she could put aside her family history and professional experience and be fair." 994 P.2d at 435. And in *Merrow*, another division of this court determined that the trial court erred when it "rejected the challenge for cause because [the juror] never stated that she would be unable to follow the court's instructions." 181 P.3d at 321. Contrary to Delmolino's argument, the prospective jurors in these

7

cases did not make statements, generic or otherwise, that they could be fair and impartial. *See Luman*, 994 P.2d at 436 ("In addition, taking the voir dire as a whole, we conclude there is no support in the record for a finding or conclusion that this juror could be fair and impartial or that she ever expressly or impliedly said she could.").

¶ 17     Moreover, contrary to the situation in those two cases,

> [i]t is within the trial court's prerogative to give considerable weight to a potential juror's statement that he or she can fairly and impartially serve on the case. If the trial court is satisfied that a potential juror will render a fair and impartial verdict according to the law and to the evidence submitted at trial, that person should not be disqualified.

*People v. Dooley*, 944 P.2d 590, 597 (Colo. App. 1997).

¶ 18     As noted above, Juror 12 did not state that she was unwilling or unable to accept the basic principles of criminal law or render a fair and impartial verdict. Instead, she made assertions regarding her fairness and her ability to judge the case based on the evidence presented. Thus, the trial court was not required to dismiss her for cause, *see Harlan*, 8 P.3d at 460, and under these circumstances,

8

the court's denial of Delmolino's challenge was not manifestly arbitrary, unreasonable, or unfair, *see Dooley*, 944 P.2d at 597.

¶ 19   Accordingly, we discern no abuse of discretion in the trial court's ruling.  *See People v. Heredia-Cobos*, 2017 COA 130, ¶ 6.

B.   The Speedy Trial Deadline and the Continuance

¶ 20   Delmolino contends that the trial court abused its discretion by continuing the trial outside of the original speedy trial deadline, and that, as a result, it violated his statutory speedy trial rights under section 18-1-405, C.R.S. 2024.[4]

1.   Applicable Law and Standard of Review

¶ 21   Section 18-1-405 guarantees criminal defendants the right to a speedy trial.  *People v. Kirby*, 2024 COA 20, ¶ 15 (citing *People v. McMurtry*, 122 P.3d 237, 240 (Colo. 2005)).  Specifically, the statute requires that a defendant be brought to trial within six months of entering a plea of not guilty unless the time for trial is extended or tolled for one of several statutorily specified reasons.  § 18-1-405(1).

---

[4] At trial, Delmolino also argued that the trial court violated his constitutional right to a speedy trial.  But Delmolino does not make a constitutional argument on appeal.

¶ 22    Whether a defendant's statutory speedy trial right has been violated is a matter of statutory interpretation that we review de novo. *Kirby*, ¶ 16. In contrast, we review a trial court's decision whether to grant a continuance for an abuse of discretion. *People v. Sauser*, 2020 COA 174, ¶ 11 (citing *People v. Villano*, 181 P.3d 1225, 1228 (Colo. App. 2008)). A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or its decision is based on a misunderstanding or misapplication of the law. *Kirby*, ¶ 16. On appeal, we review the record as it stood before the trial court at the time of its ruling. *See Bd. of Med. Exam'rs v. Duhon*, 867 P.2d 20, 23 (Colo. App. 1993).

## 2.    Additional Facts

¶ 23    Delmolino pleaded not guilty on February 15, 2022, setting his original speedy trial deadline at August 15, 2022. *See* § 18-1-405(1). At the time a plea was entered, the trial court set a motions hearing for July 1, a pretrial conference for July 21, and the jury trial for August 1.

¶ 24    However, on June 16, the prosecution filed a motion to continue the jury trial because its key witness, Parole Officer Christopher Stevenson, was unavailable for the August 1 trial date

due to a family reunion, which had been planned a year prior and was located four hours away from the courthouse. Delmolino opposed the motion and argued that his counsel would be unavailable to reschedule the trial within the speedy trial deadline. He therefore argued that he should not be forced to choose between his speedy trial right and continuing with his current counsel.

¶ 25 The court addressed the motion to continue at the July 1 motions hearing. The prosecutor asked the court to attribute any delay in needing to reset the trial past the speedy trial deadline to Delmolino. The prosecutor stated that on June 8, she emailed defense counsel about continuing the jury trial to August 8 — which was within the speedy trial deadline — and that defense counsel "said, 'Sure, that works.'" Delmolino's counsel then objected to the prosecutor's assertion, noting that she had planned to be out of town between August 8 and 15 since "the beginning of June" and that she "simply do[esn't] recall, for sure, the conversation that [she] had with the district attorney on June 8." The court then set a follow-up status conference for July 12, and the parties filed additional motions regarding the requested continuance.

¶ 26    At the July 12 status conference, the prosecutor reiterated her request to attribute the delay to Delmolino.  In response, Delmolino's counsel stated that she had "previously advised the prosecution that . . . if they're requesting a continuance, [she] would need . . . to speak with . . . Delmolino about whether he would be willing to waive speedy or whether he would like to proceed with different counsel because [she] can't [reschedule]."

¶ 27    After the status conference, the court issued a written order finding that Parole Officer Stevenson was a material witness.  But it also found that Stevenson was not unavailable and therefore any continuance would not be excluded from the speedy trial deadline. *See* § 18-1-405(6)(g)(I) (excluding from the six month speedy trial period, a "period of delay not exceeding six months resulting from a continuance granted at the request of the prosecuting attorney, without the consent of the defendant, if . . . [t]he continuance is granted because of the unavailability of evidence material to the state's case").  The court also found that the circumstances did not constitute a delay attributable to Delmolino that would allow it to continue the trial outside of the speedy trial deadline.

¶ 28    The court then determined the following:

12

- It didn't have grounds to set this case outside the speedy trial deadline, so it had to reset the case within the speedy trial deadline.

- Delmolino's counsel was out of the country until July 28, so no July trial dates would work.

- The only available trial date was August 8.

- Delmolino's counsel represented that she was planning to be on vacation the week of August 8, but her email recognized that the prosecutor may have wanted to reset for the week of August 8 and did not mention that she was unavailable that week.[5]

- Delmolino's counsel had indicated that other attorneys from her office might be available to cover the trial, but

---

[5] We note that the email is not part of the record on appeal; however, during subsequent hearings, the trial court stated that it was provided with the email and that it had quoted the email in its order. "The appellant 'bears the responsibility to designate the record on appeal and to ensure its transmission to the appellate court.' If an appellant does not designate as part of the record material portions of the proceedings, a reviewing court must assume that the omitted portions would support the judgment." *People v. Montgomery*, 2014 COA 166, ¶ 22 (quoting *People v. Rodriguez*, 914 P.2d 230, 260 (Colo. 1996)).

Delmolino would prefer her to try the case because she had been his counsel from the start of the case.

- The court had made numerous reasonable efforts to reschedule the trial, and August 8 was the only date left to try this case within the speedy trial deadline.

Based on these determinations, the trial court reset the trial for August 8.

¶ 29    However, the scheduling difficulties did not end there.  At the July 21 pretrial conference, Delmolino was represented by substitute counsel from the same public defender's office. Substitute counsel said that she "d[idn't] have another lawyer that [wa]s available on [the new trial] date."  Further, she asserted that if the trial started on August 8, Delmolino would need to proceed without counsel.

¶ 30    The court then asked if Delmolino would be willing to waive his speedy trial rights so that his original counsel could represent him at a later date.  After speaking with Delmolino and on the phone with Delmolino's original counsel, his substitute counsel said, "Delmolino does not wish to waive speedy trial completely;

14

however, he is willing to toll speedy trial so that August [22] is allowable." The trial court immediately reset trial for August 22.

¶ 31 In the week leading up to and on the day of trial, Delmolino made multiple motions to dismiss the case based on a violation of his speedy trial rights. The court denied the motions, and ultimately Delmolino went to trial on August 22, represented by his original counsel.

### 3. Whether the Trial Court Erroneously Granted the Continuance and Violated Speedy Trial

¶ 32 Delmolino argues that (1) the trial court erroneously granted the continuance of his trial date to August 8; and (2) as a result of the second resetting to August 22, the court violated his statutory speedy trial rights.[6] We address each contention in turn.

¶ 33 In reviewing the trial court's initial decision to continue trial, we must review the "reasons presented to the trial judge at the time the request is [adjudicated]." *People v. Rainey*, 2023 CO 14, ¶ 34 (quoting *People v. Hampton*, 758 P.2d 1344, 1353 (Colo. 1988)).

---

[6] The People argue that Delmolino is solely concerned with the initial continuance and is not arguing a violation of his statutory speedy trial rights. This is incorrect. We interpret Delmolino's briefing as challenging both aspects of the trial court's rulings.

15

¶ 34     When the trial court continued the trial from August 1 to

August 8, the following information was before it:

- The prosecution's key witness had an important family

  event that was planned for over a year, but that witness

  was not "unavailable" for purposes of the speedy trial

  statute.

- Before filing the motion to continue, the prosecutor

  engaged in an email exchange with Delmolino's counsel

  about the witness's unavailability and the requested

  continuance.  Delmolino's counsel responded, "So you

  will be looking to have it set the week of [August 8] then?"

  The prosecutor affirmed that she was looking at the

  weeks of August 8 or August 15.

- Although indicating it was not a preferred option,

  Delmolino's counsel had indicated that other attorneys

  from her office may be available to cover the trial.

- Delmolino's counsel was unavailable for trial every week

  in the month before the speedy trial deadline except for

  August 1, the one week that did not work for the

  prosecution.

16

¶ 35     Based on the information available to the trial court, we do not

discern that its decision to continue the trial to August 8 was

manifestly arbitrary, unreasonable, or unfair.  Continuing the trial

to a date within the speedy trial deadline on which Delmolino's

counsel indicated another public defender may be available to

represent him was within the "range of reasonable options"

available to the court.  *People v. Palacios*, 2018 COA 6M, ¶ 18.

Thus, we discern no abuse of discretion in that decision.  *See id.*

¶ 36     We next turn to the second resetting from August 8, which

was within the original speedy trial deadline, to August 22, which

was a week beyond that deadline.  The trial court reset the trial to

August 22 after Delmolino requested to toll the statutory speedy

trial deadline for approximately a week so that he could be

represented by counsel, specifically, the counsel that had been with

him since the start of the case.

¶ 37     We acknowledge Delmolino's argument that at this juncture,

he faced the choice of tolling the speedy trial deadline or possibly

needing to proceed without counsel.[7]  However, we also recognize that — by agreeing to toll the deadline for a week — Delmolino affirmatively decided between these two choices.  Moreover, this quandary was at least partially of Delmolino's making because of his desire for a particular lawyer and that lawyer's unavailability. Once the court offered a date within the speedy trial deadline that the prosecution could accept, any additional time necessary to accommodate chosen defense counsel's schedule was properly excluded from the speedy trial calculation.  *See* § 18-1-405(6)(f).

¶ 38    Delmolino's decision to toll the speedy trial deadline for a week moved the original speedy trial deadline from August 15 to August 22.  *See id.* (excluding "[t]he period of any delay caused at the instance of the defendant" from the time within which a defendant must be brought to trial).  Because his trial commenced on August 22 — within the new speedy deadline — there was no violation of his statutory speedy trial rights.  *See* § 18-1-405(1).

---

[7] Since Delmolino elected to toll the speedy trial deadline for a week and stay with his current counsel, the parties below did not develop a record regarding the availability of alternate defense counsel or another possible solution.

¶ 39    Thus, we discern no error in the trial court's compliance with Delmolino's request.  *See Kirby*, ¶ 16.

### C.    Constitutionality of the Internet Sexual Exploitation of a Child Statute

¶ 40    Delmolino contends that the portion of the internet sexual exploitation of a child statute, section 18-3-405.4(1), that he was convicted under "is facially overbroad because it substantially infringes upon constitutionally protected speech without limiting culpability for such communications to those made for some additional prurient purpose."

### 1.    Preservation and Standard of Review

¶ 41    Delmolino concedes that he failed to preserve this issue for review.  We review all errors, "constitutional and nonconstitutional, that were not preserved by objection for plain error."  *Hagos v. People*, 2012 CO 63, ¶ 14.  An error is plain if it is "obvious and substantial."  *Id.*  For an error to be obvious, it "must [have] contravene[d] (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law" at the time of trial.  *Scott v. People*, 2017 CO 16, ¶ 16 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40); *see also People v. Crabtree*, 2024 CO 40M, ¶ 72.

19

## 2.    The Trial Court Did Not Plainly Err

¶ 42    We need not reach the constitutionality of section 18-3-405.4(1) because, regardless, the trial court did not plainly err.

¶ 43    In *People v. Helms*, a division of this court rejected the same "contention that the [i]nternet child exploitation statute violates the First Amendment because it burdens a substantial amount of protected speech and is therefore overbroad." 2016 COA 90, ¶ 28. *Helms* was decided before Delmolino's trial, and "an error will not ordinarily be deemed 'obvious' when either [the supreme] court or a division of the court of appeals has previously rejected an argument being advanced by a subsequent party who is asserting plain error." *Scott*, ¶ 17. In that event, "the trial judge is bound to follow the decisions of the appellate courts and cannot generally be faulted for not departing from that authority."[8] *Id.*

---

[8] Though it's true that we are not bound by the decisions of other divisions of this court, *see People v. Smoots*, 2013 COA 152, ¶ 20, we also do not need to resolve the constitutional issue to decide this case. We therefore express no opinion on the division's resolution of this issue in *Helms*.

¶ 44    This is exactly the situation before us.  Thus, any error was not obvious, and as a result, the trial court did not plainly err.  *See id.*

## III.    Disposition

¶ 45    The judgment is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.