The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 11, 2021

## 2021COA11

**No. 16CA2200, *People v. Blassingame* — Juries — Challenges for Cause — Juror Bias**

The division considers the appropriate legal standard to be applied in determining whether a prospective juror exhibits bias sufficient to sustain a challenge for cause, and holds that the trial court erred when it stated that a juror only evinces an excusable bias in favor of a victim if she declares that she will believe the victim "no matter what the rest of the evidence is."

Court of Appeals No. 16CA2200
City and County of Denver District Court No. 15CR4481
Honorable William D. Robbins, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Blassingame,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GROVE
Fox and Harris, JJ., concur

Announced February 11, 2021

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffrey, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Daniel Blassingame, appeals the judgment entered on a jury verdict finding him guilty of sexual assault — victim incapable of appraising conduct.  Because we conclude that the trial court erroneously denied a challenge for cause to a juror who sat on the jury, we reverse the conviction and remand the case for a new trial.

## I.    Background

¶ 2    Blassingame and the alleged victim, C.A., both testified at trial.  According to C.A., she attended a party with a friend, B.H., and Blassingame, whom she had not previously met.  Blassingame, C.A., and B.H. got to the party — at the apartment of another friend of B.H. — around 10 p.m., and there were about fifteen people in attendance.  C.A. hung out at the kitchen island for most of the night, drinking alcohol with other women.  According to C.A., the last thing she remembered was "taking shots at this island," explaining that "I guess I got too drunk.  I don't remember anything else."  C.A. guessed that this was probably "an hour, hour and a half into [the party]."

¶ 3    The next thing C.A. remembered was waking up, still feeling a little drunk, with no pants on.  When she woke up, Blassingame

had his penis exposed and was attempting to have sex with her. C.A. told Blassingame "no" and proceeded to get dressed "as fast as [she] possibly could." C.A. also noted that when she woke up she felt soreness between her legs and "just didn't feel right."

¶ 4 Blassingame testified that, after arriving at the party, he drank five or six beers and had occasional "friendly" interactions with C.A. When the party wound down around 2 a.m., while preparing to sleep in the living room, he noticed that a bathroom light was on and went to turn it off. At that point he saw C.A. standing in the bathroom "just looking at herself" in the mirror. Blassingame testified that he and C.A. talked for about ten minutes, after which he "ask[ed] her if she wanted to make out for a bit," to which she responded "sure." After a few minutes of kissing Blassingame "felt like there was another moment," when he "decided to ask [C.A.] if she wanted to have sex," to which C.A. again responded "sure." Blassingame testified that she was not slurring her words or losing her balance, her eyes were not glazed over, and she did not smell like vomit.

¶ 5 Blassingame proceeded to have sexual intercourse with C.A. for "five to ten minutes," after which he realized the condom had

broken.  He and C.A. then had a conversation about the emergency contraceptive Plan B before falling asleep on the bathroom floor.  When they woke up, Blassingame asked C.A. if she wanted to have sex again, to which she responded "no."  He put his clothes on and left the bathroom, while C.A. stayed behind and dressed herself.

¶ 6     A friend of C.A.'s urged her to make a report to the police and undergo an examination.  She went to the hospital the evening after the party, where a sexual assault nurse examiner completed a rape kit and interviewed her about the incident.  C.A. talked to a police officer but elected not to go forward with charges at that time.

¶ 7     Three years later, C.A. contacted Detective Brian Slay of the Denver Police Department about pressing charges.  Blassingame was arrested and charged with two counts of sexual assault, one under section 18-3-402(1)(b), (2), C.R.S. 2020 (victim incapable of appraising conduct, a class 4 felony), and the other under section 18-3-402(1)(h), C.R.S. 2020 (victim physically helpless, a class 3 felony).  Following a three-day trial, a jury found him guilty of sexual assault under section 18-3-402(1)(b) and acquitted him of the other charge.  The trial court imposed a sentence of two years to

life in the custody of the Department of Corrections. Blassingame now appeals.

## II. Challenge For Cause

¶ 8 Blassingame contends that the trial court erroneously denied his challenge for cause to Juror S.[1] We agree.

### A. Standard of Review

¶ 9 We review a trial court's ruling on a challenge for cause for an abuse of discretion. *People v. Oliver*, 2020 COA 97, ¶ 7. A court abuses its discretion when it issues a ruling that is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *Id.* We consider the entire voir dire of the prospective juror, *People v. Wilson*, 114 P.3d 19, 22 (Colo. App. 2004), but because the trial court is uniquely able to "evaluat[e] . . . demeanor and body language," we generally defer to the trial court's assessment of a juror's credibility and sincerity in explaining her

---

[1] Blassingame also contends that the trial court committed several unpreserved evidentiary errors, that there was prosecutorial misconduct during closing arguments, that the cumulative effect of these errors requires reversal, and that, if his conviction is affirmed, the mittimus should be corrected. Because we hold that Blassingame is entitled to a new trial, we do not address either of his contentions of trial error or his assertion that the mittimus is incorrect.

state of mind. *Carillo v. People*, 974 P.2d 478, 485-86 (Colo. 1999). This deference extends to statements that "may appear to be inconsistent or self-contradictory." *Id.* at 487 (quoting *People v. Sandoval*, 733 P.2d 319, 321 (Colo. 1987)).

## B.    Applicable Law

¶ 10    The right to challenge jurors for cause stems from a defendant's right to due process and to a trial before a fair and impartial jury. *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000). A defendant's right to an impartial jury is violated if the trial court fails to remove a juror biased against the defendant. *See Nailor v. People*, 200 Colo. 30, 32, 612 P.2d 79, 80 (1980) ("To insure that [a defendant's right to an impartial jury] is protected, the trial court must excuse prejudiced or biased persons from the jury.").

¶ 11    To this end, section 16-10-103(1)(j), C.R.S. 2020, requires a trial court to sustain a challenge for cause if a juror's state of mind evinces "enmity or bias toward the defendant or the state." Similarly, Crim. P. 24(b)(1)(X) requires disqualification of a juror if his or her state of mind "manifest[s] a bias for or against the defendant, or for or against the prosecution, or the acknowledgement of a previously formed or expressed opinion

regarding the guilt or innocence of the defendant," unless "the court is satisfied that the juror will render an impartial verdict based solely upon the evidence and instructions of the court."

¶ 12    The purpose of challenges for cause, as relevant here, is not to remove jurors who simply enter the courtroom with a misunderstanding of the law.  *See* § 16-10-103(1).  Those jurors should not be removed for cause if, after explanation and rehabilitative efforts, the court believes that they can render a fair and impartial verdict based on the instructions given by the judge and the evidence presented at trial.  *People v. Clemens*, 2017 CO 89, ¶ 16.

## C.    Relevant Facts

¶ 13    Juror S disclosed on her questionnaire that she had been molested by a family member when she was a young child and, during individual voir dire, revealed that her father had not believed her allegation.  The court inquired further:

> COURT: Is [the molestation] something you think about a whole lot?
>
> JUROR S: Yeah, I do.  Especially now that I have my own daughters.

COURT: What do you think that means in terms of being a juror on this case?

JUROR S: I'm not really sure. I haven't heard any of the facts of the case. I think that I could try to be impartial, like I said in there. Do my best. But, you know . . .

COURT: A serious question: As you sit here right now, do you think Mr. Blassingame must be guilty?

JUROR S: I don't know.

COURT: You heard me read the instruction this morning about the presumption of innocence and the burden of proof.

JUROR S: Correct.

COURT: Do you think you can follow those things?

JUROR S: I could try. I suppose, from the two events that I listed there, in both cases, when my aunt and uncle were murdered, they never found the people who did it. You know, my dad's cousin, no one ever said anything to him or did anything about it. I guess my thought is that people just get away with things, and –

COURT: So here's the real question: Are you going to -- is there any reason why you think that you would put yourself in the position to be sure that Mr. Blassingame didn't get away with something?

JUROR S: If I feel that he's guilty, I want to make sure he doesn't get away with it. But I

probably wouldn't say he's guilty without hearing the case.

¶ 14    The prosecution then attempted to rehabilitate Juror S by asking a series of leading questions regarding the relevant legal standards:

> PROSECUTOR: Are you fine following the presumption of innocence and burden of proof?  You're going to hold me to my burden of proof to prove beyond a reasonable doubt?
>
> JUROR S: Yeah.
>
> PROSECUTOR: Okay, and if I don't, you can find [him] not guilty even with the charges?
>
> JUROR S: Yeah.
>
> PROSECUTOR: If I don't meet that burden?
>
> JUROR S: Yes.
>
> PROSECUTOR: Okay.  And if I do, then you can find him guilty?  If you find that I've met my burden, you can find him guilty?
>
> JUROR S: Yep.

¶ 15    But, as the prosecutor pressed on, Juror S began wavering once again.

> PROSECUTOR: Okay.  And you can follow those instructions regardless of what else happened in your life?
>
> JUROR S: I hope so.

PROSECUTOR: Well, it's important to know if you can. If you're instructed to by the judge that you only find guilty if I proved my case, every element, beyond a reasonable doubt. All right?

JUROR S: Uh-huh. I've got to tell you, when the judge talked about what the case was going to be, my heart just went from here to here (indicating). Anything but that, you know. Anything but sexual assault. But I feel like I can. I think I can. I can be impartial.

PROSECUTOR: Okay. Everyone hates sexual assault. Everybody feels that way, as well as murders. And what happened to your aunt and uncle, it's horrible. But it's important that you listen to the evidence and apply it to the law. Do you think you can do that?

JUROR S: Uh-huh.

¶ 16    Defense counsel took this opportunity to dive more deeply into Juror S's apprehension with a series of open-ended questions:

DEFENSE COUNSEL: When you heard those charges being read, what was your emotional reaction?

JUROR S: It just felt like – I don't know if I would want to listen to it. I don't want to listen to what happened. I don't want other people to look at it as a victim not being believed again, you know. That's part of – I don't know. It just – it's not really that straightforward of a train of thought.

DEFENSE COUNSEL: Right.

9

JUROR S: It's more of a feeling.

DEFENSE COUNSEL: Can you put that feeling into words though? I mean, the -- so you said -- anxiety or emotional turmoil? Does that make sense?

JUROR S: Right. Yeah.

DEFENSE COUNSEL: So in your situation, when you were not believed, would that impact your ability to see the evidence, and would you be more willing to believe a witness who is the -- who is the alleged victim?

JUROR S: I guess that's my main concern is that I might be more apt to believe, especially since I was told that I just was wanting attention is why I was telling people about it 10 years or 12 years later, you know, after it happened.

DEFENSE COUNSEL: And so if there are a number of witnesses, and everything else being equal, you would believe the victim more readily than another witness?

JUROR S: I'm not saying that I would. I'm saying I'm afraid that I would.

¶ 17     The voir dire of Juror S ended there, as it began, with Juror S unsure of her own ability to be a fair and impartial juror. Defense counsel challenged Juror S for cause, expressing concern over "her emotional state as it pertains to her own experiences and how she would more readily identify with the victim and believe the victim

10

over other witnesses, all things being equal, that's not the burden, and that's not the standard."

¶ 18 The trial court denied the challenge for cause, ruling as follows.

> I'm not going to strike her. I think the overriding -- well, at least for me, what came out is that she understands the burden of proof and she could abide by that.
>
> So the other thing about believing the victim more, I think it has to be more definite than that. I think the way the case law reads, it has to be something to the effect of no matter what the rest of the evidence is -- not all things being equal, but no matter what the rest of the evidence is, I'm going to believe the victim. And I don't think she rises to that level. So she stays. The challenge is denied.

### D. Analysis

¶ 19 According to Blassingame, Juror S should have been excused because she stated a "clear expression of doubt in her ability to judge the credibility of that testimony in an impartial manner," and she was not adequately rehabilitated afterward. The People respond that the trial court did not abuse its discretion because, despite her initial apprehension, Juror S assured the court that she "could judge the matter fairly and impartially." In fact, the People assert

11

that Juror S did not evince any disqualifying bias during her voir dire, and that her statements instead "simply reflect[ed] an honest effort to express feelings and convictions about matters of importance in an emotionally charged setting." *Sandoval*, 733 P.2d at 321. Thus, they argue, no rehabilitation was required at all.

¶ 20 As we have already noted, depending on how the questions were framed, Juror S shifted back and forth between unambiguous and equivocal answers throughout voir dire. When asked leading questions by the prosecutor about her ability to impartially assess the evidence, she generally confirmed that she would hold the People to their burden of proof. But she wavered in her responses to open-ended questions posed by both the court and defense counsel (and to some extent, the prosecutor), repeatedly giving answers like "I hope so," and "I could try," and expressing genuine concern about whether her own traumatic experiences would color her ability to evaluate the evidence without favoring the prosecution.

¶ 21 Juror S's candor was commendable, and the record makes clear that, if selected for the jury, she would be willing to try to set aside her preconceived notions about whether, and why, claims of

sexual assault should be credited. But the record does not clearly demonstrate that Juror S's efforts would be successful. For example, when the court asked Juror S if she would be able to "follow" the presumption of innocence and burden of proof if selected as a juror, she replied that she "could *try*," and that, "I guess my thought is that *people just get away with things*." (Emphasis added.) In response to the court's next question she stated that she "*probably* wouldn't say he's guilty without hearing the case." (Emphasis added.) These answers, among others, suggested that Juror S would struggle to follow the instructions and evaluate the competing stories without relying on her preconceived notions about the credibility of sexual assault victims. Accordingly, some rehabilitation was needed before she could be deemed fit to serve on the jury.

¶ 22    To be sure, the prosecution attempted to rehabilitate Juror S, but it did so by asking general, leading questions[2] focused on jury instructions and the burden of proof. Juror S initially agreed that

---

[2] "[A]nswers to leading questions are viewed with suspicion." *People v. Merrow*, 181 P.3d 319, 323 (Colo. App. 2007) (Webb, J., specially concurring).

she could follow the instructions and hold the prosecution to its burden, but when defense counsel followed up with more open-ended questions, she returned to expressing fear that she "would be more apt to believe" the victim given her prior experience. There were thus very few answers to counterbalance Juror S's uncertainty. *See People v. Merrow*, 181 P.3d 319, 321 (Colo. App. 2007) ("[W]hen . . . a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly, a challenge for cause must be granted in the absence of rehabilitative questioning or other counter-balancing information.").

¶ 23     It is of course up to the trial court to decide whether it believes a particular juror "can render a fair and impartial verdict based on the instructions given by the judge and the evidence presented at trial." *Clemens*, ¶ 16. And because it can observe the dynamics of the voir dire and personally evaluate the juror's tone and demeanor during the discussion, the trial court is uniquely positioned to make that judgment. Thus, under the circumstances here, we do not question the trial court's conclusion that "what came out is that [Juror S] understands the burden of proof and she could abide by that."

14

¶ 24     But that does not end our inquiry because, as the trial court acknowledged, Blassingame's challenge for cause cited two concerns: (1) the burden of proof and (2) whether Juror S would consider the evidence presented at trial without favoring one side over the other.  On the second issue, Blassingame contends that the trial court "employed an incorrect legal standard for the determination of bias sufficient to sustain a challenge for cause." And indeed, the second part of the trial court's ruling misstated the governing legal standard.

> So the other thing about believing the victim more, I think it has to be more definite than that.  I think the way the case law reads, it has to be something to the effect of no matter what the rest of the evidence is . . . I'm going to believe the victim.  And I don't think she rises to that level.

¶ 25     As we understand it, the trial court ruled that in order for Juror S to have evinced excusable bias in favor of the prosecution, she would have needed to be unwavering in her resolve to believe the victim over any other witness.  Or, put another way, the trial court concluded that Juror S should not be removed unless she would credit the victim no matter what the rest of the evidence established.  That is incorrect, *see, e.g., People v. Prator*, 833 P.2d

15

819, 820-21 (Colo. App. 1992), *aff'd*, 856 P.2d 837 (Colo. 1993), and on appeal, the People neither defend this characterization of the governing standard nor cite any authority that would support it. Instead, the People assert that, rather than demonstrating disqualifying bias, Juror S's voir dire instead reflects her honest effort to express her feelings and convictions. *See Sandoval*, 733 P.2d at 321.

¶ 26    Juror S's sincerity, however, is beside the point. Rather, the key question is whether, as a matter of law, the trial court adequately accounted for Juror S's repeated suggestions that her own past trauma would adversely impact her ability to fairly evaluate the evidence. A prospective juror does not need to unequivocally state her partiality for one side to be deemed unfit to serve on a jury. *See, e.g.*, *Nailor*, 200 Colo. at 32, 612 P.2d at 80, (holding that challenge for cause should have been granted because "the fact that the juror doubted she could be fair because of her recent 'bad experience'" was a "clear expression of bias"); *Merrow*, 181 P.3d at 321 (holding that prospective juror should have been excused where "the record contain[ed] nothing to support an inference that [the juror] would be able to resolve credibility fairly,

16

given her views about drug usage"); *People v. Luman*, 994 P.2d 432, 434-36 (Colo. App. 1999) (holding that challenge for cause should have been granted where juror made equivocal statements about her ability to be fair and then was inadequately rehabilitated). And here, despite the prosecutor's attempts at rehabilitation, Juror S's equivocation quickly reappeared once defense counsel began to pose open-ended questions.

¶ 27     We acknowledge the trial court's broad discretion, guided by section 16-10-103(1)(j) and Crim. P. 24(b)(1)(X), to determine if a juror can be fair and impartial. But the appropriate exercise of that discretion depends on an accurate articulation of the governing standard. Thus, although the trial court found that Juror S could hold the prosecution to its burden of proof, its consideration of whether Juror S could fairly weigh the alleged victim's testimony was fatally flawed. The combination of (1) Juror S's uncertain answers, which established bias sufficient to require rehabilitation, (2) her return to equivocation after the prosecutor's attempt to rehabilitate her via leading questions, and (3) the trial court's incorrect statement of law concerning the degree of bias necessary

17

to sustain a challenge for cause demonstrates that the trial court did not properly evaluate the issue before it.

¶ 28     When it comes to challenges for cause, we may not "abdicate [our] responsibility to ensure that the requirements of fairness are fulfilled." *Morgan v. People*, 624 P.2d 1331, 1332 (Colo. 1981). Juror S's last statement ("I'm not saying that I would [believe the victim more readily than another witness].  I'm saying I'm afraid I would."), which was consistent with much of what she had already said, leaves us with considerable uncertainty that she could abide by the requirement to decide crucial issues fairly.  *See Nailor*, 200 Colo. at 31, 612 P.2d at 80 (error to deny challenge for cause where juror's "final position was that there was a serious doubt in her own mind about her ability to be fair and impartial").  And because that uncertainty is heightened by the trial court's inaccurate recitation of the governing standard, we conclude that Juror S's equivocation required the court to grant the challenge for cause.  Because Juror S sat on the jury, reversal is required.  *See People v. Abu-Nantambu-El*, 2019 CO 106, ¶¶ 28-30.

18

## III. Conclusion

¶ 29 The judgment of conviction is reversed and the case is remanded for a new trial.

JUDGE FOX and JUDGE HARRIS concur.