22CA1212 Peo v Ladd 10-17-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1212
Douglas County District Court No. 21CR469
Honorable Theresa Slade, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dennis Floyd Ladd,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Navarro and Richman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 17, 2024

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Dennis Floyd Ladd, appeals his felony convictions for various sex crimes.  Ladd specifically contends that the trial court erred by denying his causal challenges to two prospective jurors — Juror T and Juror C — both of whom ultimately served on the jury.  Because we agree that the court erred by denying the challenge for cause as to Juror T, we needn't consider Ladd's arguments regarding Juror C.  We reverse the judgment and remand for a new trial.

## I.     Voir Dire

¶ 2     At the beginning of voir dire, the court reviewed the basic legal principles that applied to the case, including, among other principles, that a "defendant has a constitutional right not to testify," and that "[t]he decision not to testify cannot be used as an inference of guilt."

¶ 3     During voir dire, defense counsel questioned the panel about a criminal defendant's right to be silent.  As part of that discussion, defense counsel asked whether anyone was "going to need to hear from [defense counsel], or [Ladd], or a witness I bring forward to disprove the prosecution's evidence."  After several prospective jurors agreed that they would generally want to hear from both

1

sides, defense counsel then explained, more specifically, that "[Ladd] could take a walk right up there, sit in that chair, swear an oath to swear the truth, and you could hear it right from the horse's mouth what his position on the allegations are." And defense counsel stated, "That is [Ladd's] right. No one can take that away from him. He also doesn't have to do that if he doesn't want to. Okay. It could be his turn to testify and he says no thanks."

¶ 4 Continuing to probe this topic, defense counsel asked jurors if they would "want to hear from [Ladd]." This colloquy led to a prospective juror saying, "We're all sitting here telling you that we would all wonder, but when does wonder kind of creep in a little bit further than just wonder and kind of go, you know, it makes it look really questionable why [Ladd didn't testify]." Defense counsel then polled the panel to see who agreed with this position. Multiple prospective jurors agreed, including Juror T.

¶ 5 As part of defense counsel's follow-up, he and Juror T had the following exchange:

> Defense counsel: Okay. [Juror T], the law is you can't consider that whatsoever as an inference of guilt or innocence if [Ladd] doesn't speak his peace to you. Are we on the same page so far?

2

Juror T: Yes.

Defense counsel: What are your thoughts about that? Is that going to be difficult for you to follow or are you going to be able to — because you raised your hand before. It sounds like you've got an opinion on it you kind of agree with [another prospective juror] that it's something to think about. Can you follow the law?

Juror T: I have the same answer and I would probably take it as far as to say it's unusual, but you know, that said, I can't remember who was talking down there, I wouldn't take it to that extent. But, yeah, I think if I had to lean one direction or another, it's not neutral. You know, there's a small — it would create a small gray area for me.

Defense counsel: When you say gray area, do you mean like an inference of guilt?

Juror T: Yeah.

Defense counsel: So despite the law that you can't, you think that might happen to you based on the circumstances.

Juror T: I understand what you're saying about the law. I think applying the logic in my head when my two kids fight in the living room and I catch them after the fact, it's like one says what happened, the other one doesn't. Well, okay, then there's one versus the other that I tend to lean towards for sure.

3

> Defense counsel: So other than just sort of common sense or logical nature of it, you've got some life experience with your two kids.
>
> Juror T: I think everybody has life experience in some regard, yes.

¶ 6    Juror T wasn't questioned further on this response or about a defendant's right to be silent.

¶ 7    At the end of voir dire, defense counsel challenged Juror T for cause, pointing to Juror T's statement that if Ladd exercised his right to silence, it would create an inference of guilt. The prosecutor objected and pointed out that "there was no follow up" regarding whether Juror T "could follow the law if he was instructed by the court." Defense counsel responded, "If the [c]ourt is inclined to agree with [the prosecutor], I would ask the [c]ourt [to] ask [Juror T] explicitly if he could follow the law."

¶ 8    The court denied the causal challenge without questioning Juror T or addressing whether Juror T could follow the law. In doing so, the court said:

> I actually think [Juror T] was responding to other types of questions that were being asked. There was a discussion about number of witnesses and if you believe someone. He did say this gives us something to think about, that he didn't agree with [Juror E]. He even

references [Juror E].  He goes, "But I understand where he's coming from.  I just think it's different."  I think at that point [Juror O] interrupted and started talking about [the] People's burden of proof.  So I'm not excusing [Juror T] for cause.[1]

¶ 9    Defense counsel exhausted his peremptory challenges, and Juror T ultimately sat on the jury.

## II.    Analysis

¶ 10    Ladd elected not to testify at trial.  Based on Juror T's statement about the inference of guilt, Ladd maintains that the trial court reversibly erred by denying his challenge for cause to Juror T. We agree.

¶ 11    Every criminal defendant has a constitutional right to a trial by an impartial jury.  *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *see also People v. Blassingame*, 2021 COA 11, ¶ 10.  To protect this right, a court must disqualify a juror who indicates a

---

[1] In its ruling, the court seems to have mixed Juror T up with other prospective jurors.  For instance, the court said that Juror T had specifically referenced prospective Juror E, but the record shows that prospective Juror P — not Juror T — specifically referenced prospective Juror E.  And the court said that prospective Juror O interrupted Juror T to discuss the prosecution's burden of proof, but prospective Juror O's comments about the burden of proof followed the questioning of prospective Jurors R and P, again not Juror T.

bias in favor of or against either side, unless the court is satisfied that the juror will render an impartial verdict that is based solely on the evidence and instructions of the court. *See Blassingame*, ¶ 11; *see also* § 16-10-103(1)(j), C.R.S. 2024; Crim. P. 24(b)(1)(X).

¶ 12     When faced with a prospective juror who is unable to accept basic principles of criminal law — such as a defendant's rights to remain silent and elect not to testify — the trial court must excuse the prospective juror unless, after further examination, the court is convinced that the juror will follow the law and be impartial. *See, e.g., Marko v. People*, 2018 CO 97, ¶ 21; *People v. Clemens*, 2017 CO 89, ¶ 16. Thus, if a prospective juror's statements compel the inference that the juror can't or won't follow the court's instructions, and no rehabilitation occurs, the challenge for cause must be granted. *People v. Maestas*, 2014 COA 139M, ¶ 18.

¶ 13     We review the trial court's denial of a challenge for cause for an abuse of discretion. *Id.* at ¶ 11. If the court fails to excuse a biased juror who then serves on the jury, the error is structural and requires reversal. *See Clark v. People*, 2024 CO 55, ¶ 35; *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 30.

¶ 14 Based on the record here, the trial court should have dismissed Juror T. Juror T plainly and directly agreed when asked if he would use Ladd's silence against him by inferring guilt from Ladd's decision not to testify. And because neither the prosecutor nor the court asked any clarifying questions on this point, Juror T never assured the court that he could set aside his clearly expressed view and apply the law as instructed. Because nothing in the record demonstrates Juror T would not hold Ladd's silence against him, the court erred by denying the causal challenge. *See Blasingame,* ¶¶ 13, 21, 27 (concluding the trial court erred by failing to dismiss a juror who gave "uncertain answers" about whether she could follow the law and was never sufficiently rehabilitated); *see also People v. Merrow,* 181 P.3d 319, 321 (Colo. App. 2007) (noting that when a prospective juror's statements "compel the inference" that they cannot decide issues fairly, "a challenge for cause must be granted in the absence of rehabilitative questioning or other counter-balancing information").

¶ 15 The People attempt to salvage the court's ruling by suggesting that Juror T's statement should be considered less concerning because it was in response to a leading question and Juror T never

said he wouldn't follow the court's instructions on the right to silence. But that's precisely the problem. These points could have been explored in rehabilitative questioning, but because neither the prosecutor nor the court opted to question Juror T about his plain statement that he would use Ladd's silence as an inference of guilt, we may not assume that Juror T could set aside his views and apply the law. *See People v. Zurenko*, 833 P.2d 794, 797 (Colo. App. 1991) (noting an appellate court "may not assume" that a juror would render an impartial verdict where no attempt was made to determine if she could apply the law after she indicated a preconceived bias); *see also Maestas*, ¶ 19 (concluding the trial court reversibly erred by denying a challenge for cause to a prospective juror who said she might hold the defendant's silence against him, was "never rehabilitated," and sat on the jury).

¶ 16     Nor do we attribute any significance to Juror T's silence in response to defense counsel's final voir dire question asking whether there are any prospective jurors "other than the people I've already spoken to" who would use Ladd's silence against him. Because Juror T had already expressed his view that he would infer guilt from Ladd's silence, we don't agree that Juror T's silence in

8

response to the question aimed at others suggests — particularly in the absence of rehabilitative questioning — that his views had changed. *Cf. Clemens*, ¶ 19 (holding "a prospective juror's silence in response to *rehabilitative questioning* constitutes evidence that the juror has been rehabilitated when the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence") (emphasis added).

¶ 17 Because Juror T expressed that he would infer guilt from Ladd's silence, and he was not rehabilitated, the trial court abused its discretion by denying the challenge for cause. And because Juror T served on the jury, we must reverse. *See Maestas*, ¶ 20.

### III. Disposition

¶ 18 The judgment is reversed, and the case is remanded for a new trial.

JUDGE NAVARRO and JUDGE RICHMAN concur.

9