22CA0011 Peo v Black 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0011
Weld County District Court No. 18CR864
Honorable Vincente G. Vigil, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeremy Black,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Philip J. Weiser, Attorney General, Lane Towery, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jeremy Black, appeals his convictions for various sex crimes against his stepdaughter. He contends, among other things, that the trial court erred by denying a challenge for cause to a deliberating juror who expressed partiality in favor of child sexual assault victims and wasn't rehabilitated. Because we agree that the court erred by denying the challenge for cause, we must reverse the judgment and remand for a new trial.

## I.    Background

¶ 2    When the victim was roughly fourteen, she alleged that Black had been sexually abusing her since she was six or seven years old. The outcry resulted in criminal charges against Black for multiple counts of sexual assault on a child. Black denied any inappropriate touching.

¶ 3    Before voir dire, the prospective jurors completed written questionnaires. The questionnaire advised that Black "is accused of repeatedly sexually assaulting his stepdaughter" and he has "pleaded not guilty to all charges." In his questionnaire, Juror R responded that he had a substantial doubt about his ability to "fairly and impartially listen to allegations where a child is alleged to have been a victim." He specifically responded that he "would be

1

partial to the child," that "sexually assaulting a child is disgusting and the child wouldn't make something like that up," and he checked the box affirming that he had a "serious doubt" about his "ability to be fair."

¶ 4    Based on these responses, the court allowed the parties to question Juror R before the general voir dire. During this questioning, Juror R expressed general agreement with certain principles of criminal law — like the presumption of innocence and the prosecution's burden of proof. He also expressed that his "first instinct" is to believe children. When pressed on this point, Juror R acknowledged that children could lie and explained that the age of the child would make a difference because as you "get older you then learn kind of how to lie."

¶ 5    Despite that, Juror R later disclosed that his sister had been touched inappropriately when she was fourteen — the victim's age when she disclosed Black's sexual abuse — and that his sister "would never lie about something like that, and that's kind of my example in this case with just what I've grown up with." When asked if hearing from a child who was "similar in age" to his sister when she was touched would make him "sympathetic in a way that

may be unfair" to Black, Juror R replied, "I think so" — because he believed his sister. He went on to elaborate that "just with like the similarities, I think that's where it's at, personally. I think I would just kind of make — kind of just remember my sister."

¶ 6        At this point, the court took up the questioning:

> Court: I just want to make sure that I clarify because I wasn't 100 percent clear about that last question. Are you saying that if you heard from someone around the same age as your sister was, like --
>
> . . .
>
> Court: -- 13, 14, 15 --
>
> . . .
>
> Juror R: Yeah, because that's what . . . [my sister's] age was, so -- and like I said, I believed her right away, so I think that's where I stand with that.
>
> . . .
>
> Court: So if you heard somebody make this type of claim when they're around that same age, would you automatically assume that they were telling the truth if you didn't have that same sister relationship or do you feel like you would be able to judge the evidence and judge her credibility and decide for yourself whether or not she was telling the truth, or would that just be something you assumed?

Juror R: I think it would be my first instinct, like I was saying, and I would like to think that I would be able to look at the evidence and make a decision guided on that case and everything that's been provided here.

Court: But your first instinct would be to . . .

Juror R: To believe them, yes.

¶ 7 Defense counsel then moved to strike Juror R for cause, arguing that his sister's experience "would affect his ability to render an impartial verdict." The prosecutor acknowledged some problems with the responses to the court's questions but suggested Juror R was confused and should be questioned further.

¶ 8 The court agreed that "some of [Juror R's] answers were not terribly clear." The court deferred ruling on defense counsel's causal challenge until after general voir dire so that it could consider any additional information Juror R may provide.

¶ 9 During general voir dire, however, neither the prosecutor nor the court revisited Juror R's responses or questioned Juror R further about his instinct to believe a child witness or the impact of his sister's experience on his ability to be a fair and impartial juror. Instead, Juror R responded to a few general questions posed to the venire panel, including whether he had any family members in law

4

enforcement, whether he would evaluate video or photographic evidence differently than testimony, and whether he could talk about uncomfortable things in a public setting.

¶ 10    The court denied defense counsel's challenge for cause "[b]ased on the additional statements made by [Juror R]." The court added that "in context of his additional answers" it had no "significant concern about his ability to be fair."

¶ 11    The defense exhausted its peremptory challenges on other prospective jurors, and Juror R served on the jury.

## II.    Challenge for Cause

¶ 12    Black contends that the trial court erred by denying his challenge for cause to Juror R.

¶ 13    Every criminal defendant has a constitutional right to a fair trial by an impartial jury. *See* U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, §§ 16, 25; *see also People v. Blassingame*, 2021 COA 11, ¶ 10. To protect this right, a court must disqualify biased prospective jurors. *See Blassingame*, ¶ 11; *see also* § 16-10-103(1)(j), C.R.S. 2024; Crim. P. 24(b)(1)(X).

¶ 14    A prospective juror's expressed preconceived beliefs as to some aspect of the case don't necessarily require dismissal for cause. *See*

*Marko v. People*, 2018 CO 97, ¶ 21.  Indeed, a trial court shouldn't remove a prospective juror for cause if, after further examination and rehabilitative questioning, the court is satisfied that the juror will follow the law and be impartial.  *People v. Gulyas*, 2022 COA 34, ¶ 19.  But when a prospective juror's statements compel the inference that they cannot decide the issues fairly, and no rehabilitation occurs, the challenge for cause must be granted.  *Id.*

¶ 15    We review the trial court's denial of a challenge for cause for an abuse of discretion.  *Blassingame*, ¶ 9.  A court abuses its discretion when its ruling "is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law."  *Id.*  If the court fails to excuse a biased juror who then serves on the jury, the error is structural and requires reversal.  *Clark v. People*, 2024 CO 55, ¶¶ 30, 35.

¶ 16    On this record, we conclude that the trial court erred by not dismissing Juror R.  Starting with his questionnaire, Juror R expressed serious and substantial doubt about his ability to be a fair and impartial juror.  In individual questioning, he explained that he was partial toward children and shared that his first instinct is to believe them.  Even more concerning, he also related

his sister's experience of being inappropriately touched when she was around the same age the victim was when the victim disclosed the abuse, said that he believed his sister, and agreed that her experience would make him sympathetic in a way that may be unfair to Black. Indeed, Juror R's final statement to the trial court before general voir dire was that, given his sister's experience, his first instinct would be to believe a child's sexual abuse claim made when the child was around the same age his sister was when she was inappropriately touched.

¶ 17 And the general voir dire did nothing to alleviate concerns about Juror R's partiality. Neither the prosecutor nor the court questioned Juror R further about his previous statements. Nothing touched on whether Juror R could set aside his instincts and his sister's experience. Nor did Juror R ever assure the court during general voir dire that he could set them aside (or even try to set them aside) and serve as a fair and impartial juror. Without these assurances, the court should have dismissed Juror R. *Compare Gulyas*, ¶ 24 (concluding that the court erred by denying a causal challenge where the juror "never gave any assurances that he could set aside his clearly expressed bias in favor of child witnesses and

7

follow the court's instructions"), *with People v. Fleischacker*, 2013 COA 2, ¶ 27 (noting that a prospective juror's commitment to try to set aside their biases along with an expressed belief that they can be fair is sufficient to deny a causal challenge).

¶ 18 To be sure, we agree with the People that Juror R made some "inconsistent and equivocal" statements. He agreed that children could lie yet consistently repeated that his "first instinct" is to believe children, particularly children around the same age his sister was when she was inappropriately touched. And he generally equivocated and hedged about whether he could follow basic criminal law principles, including the court's credibility instruction. But he never equivocated on the fact that he believed his sister was touched inappropriately, that she would not lie about that, and that he believed her experience would make him an unfair juror. We thus disagree with the People that Juror R's equivocal statements either did not require rehabilitation, *see Blassingame*, ¶ 21 (concluding that the juror's uncertain and equivocal responses required "some rehabilitation" before the juror "could be deemed fit to serve on the jury"), or were sufficiently rehabilitating themselves to assure the court that he could serve as a fair and impartial juror,

*see People v. Maestas*, 2014 COA 139M, ¶ 19 (concluding that the trial court reversibly erred by denying a challenge for cause to a deliberating juror who said she might hold the defendant's silence against him and was "never rehabilitated"); *see also People v. Zurenko*, 833 P.2d 794, 797 (Colo. App. 1991) (noting that an appellate court "may not assume" that a juror would render an impartial verdict where "no attempt was made" to determine if she could apply the law after she indicated a preconceived bias).

¶ 19 Finally, we agree with the People that the trial court has discretion to evaluate a juror's demeanor and credibility when assessing bias. But that's not what happened here. The court didn't say anything about Juror R's demeanor or credibility. It denied the challenge for cause based on the "additional statements made by [Juror R]" in general voir dire. As explained, however, nothing in general voir dire touched on Juror R's stated bias or on his ability to set aside his bias. *See Gulyas*, ¶ 25 (rejecting the People's claim that the trial court denied a challenge for cause based on demeanor and credibility where it was based on the court's "misrecollection" of the juror's comments).

¶ 20    Because Juror R expressed partiality in favor of child sexual assault victims and was not rehabilitated, the trial court abused its discretion by denying the challenge for cause.  And because Juror R served on the jury, reversal is required.  *See Clark*, ¶¶ 30, 35.

## III.    Remaining Evidentiary Contentions

¶ 21    Because they might not arise on retrial or, if they do, might arise in a different manner or under different circumstances, we decline to address Black's two remaining contentions that the trial court erred by allowing both hearsay testimony and generalized expert testimony that he claims improperly bolstered the victim's credibility.  *See People v. Becker*, 2014 COA 36, ¶ 29 (declining to review fact-specific contentions that may "result in an advisory opinion, which risks improperly depriving the parties of their prerogative to litigate the case as they choose").

## IV.    Disposition

¶ 22    The judgment is reversed, and the case is remanded for a new trial.

JUDGE BROWN and JUDGE SCHOCK concur.