23CA1546 Peo v Fiacco 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1546
El Paso County District Court No. 22CR2895
Honorable Samuel A. Evig, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Carmen Anthony Fiacco,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Carmen Anthony Fiacco, appeals the judgment of conviction entered on a jury verdict finding him guilty of driving while ability impaired - fourth or subsequent offense (felony DWAI), careless driving, speeding (twenty-five to thirty-nine miles per hour over the limit), failure to display proof of insurance, and failure to use a seatbelt.  We affirm.

## I.    Background

¶ 2    Colorado State Trooper Dominic Montoya pulled Fiacco over after he observed Fiacco driving with his hazards on, swerving within his lane, speeding, accelerating rapidly, and failing to use a turn signal to switch lanes.  While speaking with the occupants of the vehicle, Trooper Montoya noted that Fiacco's speech was "very thick-tongued, almost mumbly" and his eyes were glassy.  Trooper Montoya asked for Fiacco's license, registration, and insurance.  Fiacco was only able to produce his license.  During this exchange, Fiacco admitted that he had not been wearing his seatbelt.

¶ 3    Trooper Montoya requested backup to conduct a series of field sobriety tests based on Fiacco's appearance and erratic driving.  The results of the field sobriety tests were mixed, as Fiacco performed well on the tests designed to identify alcohol impairment

1

but less so on the tests designed to identify the influence of drugs. Trooper Montoya arrested Fiacco for driving under the influence (DUI). A search of the car revealed a small bag of methamphetamine, a water pipe, a small butane torch, and an open container of alcohol.

¶ 4 Fiacco consented to a blood test and Trooper Montoya drove him to the hospital for the procedure. Officer Matthew Hood performed a drug recognition expert (DRE) evaluation of Fiacco at the hospital. At the time of testing, Officer Hood was not fully certified as a DRE and, as part of the certification process, required supervision during the evaluation. Sergeant Glenn Thomas, a certified DRE, supervised Officer Hood's evaluation of Fiacco. A breathalyzer test revealed that Fiacco had no alcohol in his system.

¶ 5 But Officer Hood's evaluation ultimately revealed that Fiacco presented with involuntary eye muscle contractions (referred to in such testing as "lack of convergence"), body tremors, elevated vital signs, dilated pupils, an inability to estimate a thirty-second passage of time, and a white substance around his nose and mouth. During the evaluation, Fiacco admitted to using

methamphetamine and cannabis two days earlier. His blood test returned a positive result for methamphetamine.

¶ 6     The prosecution charged Fiacco with DUI - fourth or subsequent offense, careless driving, speeding, failure to display proof of insurance, and failure to use a seatbelt. A jury convicted Fiacco of the lesser offense of felony DWAI.[1] He was convicted as charged on all other counts.

## II.     Juror Bias

¶ 7     Fiacco contends the trial court violated his right to a fair trial by an impartial jury when it erroneously denied his challenges for cause to Jurors 33, 34, and 35 after they indicated they would be biased by Fiacco's prior DUI convictions. We disagree.

### A.     Additional Background

¶ 8     During voir dire, defense counsel questioned some of the prospective jurors about their ability to consider Fiacco's prior DUI convictions only as proof that he committed the prior offenses. Defense counsel initially prompted the discussion by asking jurors whether "based on hearing that there may have been prior DUI

---

[1] The jury found that Fiacco was previously convicted of DUI in 1998 and DWAI in 2015 and 2019.

convictions that it's more likely that Mr. Fiacco [was] driving under the influence on this occasion?" Multiple jurors — including Jurors 33, 34, and 35 — agreed that they would consider Fiacco's past convictions when deciding whether he was guilty of DUI in this case. When questioned further, Juror 34 explained that he would find it difficult to "only consider prior convictions as proof of an element that requires prior convictions" as opposed to "whether or not they were driving under the influence." Defense counsel asked Juror 34 whether he could "with 100% certainty" only consider Fiacco's prior convictions as proof of an element. Juror 34 said he could not.

¶ 9    Following the conclusion of defense counsel's voir dire, the court explained in greater detail the law surrounding the use of prior convictions within a criminal case. The court stated that "the People are alleging that Mr. Fiacco has been convicted of alcohol related driving offenses or drug related driving offenses on prior occasions." The court then said, "It is the law in Colorado that you cannot use that evidence to determine whether or not he was driving under the influence on the date the prosecution was charged." In support of this rule, the court noted that "Mr. Fiacco

4

[is] entitled to be tried for the crime charged and no other. Simply because someone may or may not have done something in the past should have no real bearing as to whether someone did what they're accused of in this case." The court asked the jurors who had expressed concern whether they could "apply the law as [the court] just explained it and not use those [prior convictions] to determine whether Mr. Fiacco was driving under the influence on June 19th?" Jurors 33 and 34 said they could apply the law as explained. Juror 35 asked a few clarifying questions, which the court answered, and then confirmed that he could apply the law as explained.

¶ 10    Defense counsel challenged Jurors 33, 34, and 35 for cause on the grounds that all three of them indicated during voir dire that they would be unable to put aside Fiacco's prior convictions. The prosecution opposed these challenges "based on the Court's inquiry." The court denied all three challenges for cause after finding that each juror indicated they could commit to following the law after hearing the court's explanation. All three jurors sat on the jury, though Juror 35 served only as the alternate and did not deliberate.

## B.     Applicable Law and Standard of Review

¶ 11     Criminal defendants have a constitutional right to a fair trial by an impartial jury.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  To protect this right, a trial court must disqualify "a juror who indicates a bias in favor of or against either side, unless the court is satisfied that the juror will render an impartial verdict that is based solely upon the evidence and instructions of the court." *People v. Gulyas*, 2022 COA 34, ¶ 18; *see also* § 16-10-103(1)(j), C.R.S. 2025; Crim. P. 24(b)(1)(X).  A juror's preconceived beliefs regarding part of a case do not automatically mandate exclusion of that juror for cause.  *Gulyas*, ¶ 19.  "If, after further examination, the court is convinced that the juror will follow the law and be impartial — in other words, if 'rehabilitative efforts' prove successful — the juror should not be removed."  *Id.* (quoting *People v. Clemens*, 2017 CO 89, ¶ 16).  And "we generally defer to the trial court's assessment of a juror's credibility and sincerity in explaining [their] state of mind."  *People v. Blassingame*, 2021 COA 11, ¶ 9.

¶ 12     We review de novo whether a defendant's right to an impartial jury was violated.  *People v. Garcia*, 2022 COA 144, ¶ 13.  But "[w]e review the trial court's denial of a challenge for cause for an abuse

6

of discretion." *Gulyas*, ¶ 20. "A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *Id.*

## C.    Analysis

¶ 13     Initially, we note that in his opening brief, Fiacco challenged the trial court's ruling as to all three jurors. In his reply brief, however, he appears to concede, as he must, that any error related to Juror 35 was harmless because that juror did not ultimately deliberate or decide the case. *See Vigil v. People*, 2019 CO 105, ¶ 25 (holding that where a challenged juror "did not sit in judgment of the case . . . the defendant could not have been harmed"). We therefore only address Fiacco's challenges to Jurors 33 and 34.

¶ 14     Fiacco argues the trial court abused its discretion when it failed to dismiss Jurors 33 and 34. In support of this claim, Fiacco relies on *Blassingame*, ¶ 27, in which a division of this court found that the trial court abused its discretion by failing to dismiss a potential juror after she continuously expressed uncertainty in her own ability to be fair and impartial in a sexual assault case due to her own life experiences. The division noted that a "prospective juror does not need to unequivocally state her partiality for one side

to be deemed unfit to serve on a jury," and that the juror's "repeated suggestions that her own past trauma would adversely impact her ability to fairly evaluate the evidence" was sufficient to support the challenge for cause. *Id.* at ¶ 26.

¶ 15 Fiacco asserts Jurors 33 and 34 expressed uncertainties similar to those conveyed in *Blassingame* when they wavered on their capacities to consider his prior convictions solely for the limited purpose of proving an element of the current charge. Specifically, Fiacco points to Juror 34's "lengthy exchange with defense counsel where he admitted that his opinions were 'in conflict' with the law" as indicative of his bias. But bias does not automatically mandate exclusion if a juror can be rehabilitated. *See Gulyas*, ¶ 19. And here, unlike in *Blassingame*, Jurors 33 and 34 definitively stated that they could follow the law surrounding prior convictions after the court offered a more detailed explanation.

¶ 16 Fiacco argues that the jurors' subsequent commitment to follow the law was insufficient and that "the record does not support why their final, brief responses should be weighed more heavily" than their earlier statements. He also contends that the court's attempts at rehabilitation were insufficient because they did

not adequately account for the jurors' initial views about prior convictions or provide "meaningful 'counter-balancing information.'" (Quoting *Blassingame*, ¶ 22.)

¶ 17    But as previously noted, the court went to great lengths to explain the law surrounding the use of prior convictions. It gave a detailed explanation of the law, stated why jurors are limited in considering prior convictions, and ended by asking if the prospective jurors could "apply the law as [the court] just explained it[?]" The response from the jurors was mixed. Some jurors — including Jurors 33 and 34 — said that they would be able to follow the law. Others disagreed and stated that they would be unable to consider Fiacco's prior convictions solely for that limited purpose. The court took that into account when it denied defense counsel's challenges for cause, noting that "jurors went both ways on this question, so there's clearly no sort of peer pressure to answer one way or another." The trial court found that its explanation of the law successfully rehabilitated the jurors. *See Gulyas*, ¶ 19. And as we are to defer to the trial court's assessment of a juror, *Blassingame*, ¶ 9, we conclude that the court did not

9

abuse its discretion by rejecting defense counsel's for-cause challenges to Jurors 33 and 34 for cause.

### III.   Sergeant Thomas's Expert Testimony

¶ 18    Fiacco argues the trial court abused its discretion by admitting Sergeant Thomas's expert testimony about Officer Hood's DRE evaluation. We disagree.

### A.   Additional Background

¶ 19    On direct examination, Sergeant Thomas testified regarding his qualifications as an expert in drug recognition and in instructing how to perform DRE evaluations, as well as his role on the night Fiacco was brought to the hospital. Sergeant Thomas acknowledged that he "did not interact with [Fiacco]" and that his "role that evening [was] to be a supervisor and the evaluator of Officer Hood." The prosecution then asked Sergeant Thomas if "[a]t the conclusion of Officer Hood's DRE evaluation, in your opinion as a DRE instructor, would you have made any corrections to the manner in which he conducted his evaluation?" Sergeant Thomas said he had no corrections and that Officer Hood "was very proficient and showed no errors during his evaluation."

¶ 20 On cross-examination, defense counsel confirmed these points. Defense counsel also asked Sergeant Thomas whether he had the same vantage point as Officer Hood. Sergeant Thomas stated that he did not.

### B. Standard of Review and Applicable Law

¶ 21 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Clark*, 2015 COA 44, ¶ 14.

¶ 22 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." CRE 702. Witnesses may not opine on the veracity of another witness. *People v. Murphy*, 2021 CO 22, ¶ 36. However, if the testimony is not offered to comment on another witness's credibility, but rather for another narrow purpose, then the testimony may be proper. *See id.* at ¶ 37 (holding that an officer's testimony about the defendant's body language during an interview was proper because it was only used to explain the officer's interviewing tactics and decision to switch to leading questions during the interview).

## C.    Analysis

¶ 23    Fiacco argues Sergeant Thomas's testimony "served no other purpose than to bolster Hood's testimony."  First, we note that the trial court limited the scope of Sergeant Thomas's testimony.  It allowed Sergeant Thomas to "comment[] on his observations of the conduct of Officer Hood [and] relay[] factually what he saw."  But the court barred Sergeant Thomas from saying "whether or not he agreed with [Officer Hood's] determination."  Sergeant Thomas's testimony did not stray outside of those boundaries and Fiacco does not argue otherwise.

¶ 24    Second, while Fiacco is correct in noting that one witness may not comment on the veracity of another, *Murphy*, ¶ 36, he inaccurately characterizes Sergeant Thomas's testimony.  Sergeant Thomas did not comment on Officer Hood's ultimate conclusion. He simply stated that he supervised Officer Hood per DRE certification requirements, and that Officer Hood conducted the tests correctly.

¶ 25    We conclude that Sergeant Thomas's testimony was proper when offered for the narrow purpose of confirming that Officer Hood, as a DRE trainee, completed his evaluation of Fiacco without

12

issue.  *See id.* at ¶ 37.  We cannot discern how the limited scope of Sergeant Thomas's testimony improperly bolstered Officer Hood's credibility.  The trial court, therefore, did not abuse its discretion by admitting the testimony.

## IV.   Disposition

¶ 26    The judgment is affirmed.

JUDGE WELLING and JUDGE LIPINSKY concur.